CARDINAL FEDERAL SAVINGS & LOAN ASSN., APPELLANT, *v.* CUYAHOGA COUNTY BOARD OF REVISION ET AL., APPELLEES.

14

(No. 74-1117—Decided October 15, 1975.)

16

*Messrs. Parks, Eisele, Lawrence & Bates, Mr. Ralph C. Anzivino* and *Mr. G. Del Bates*, for appellant.

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Thomas P. Cyrus*, for appellee Cuyahoga County Board of Revision.

*Mr. James B. Davis*, director of law, and *Mr. Jeffrey B. Marks*, for appellee City of Cleveland.

*Messrs. Kelley, McCann & Livingstone, Mr. Walter C. Kelley* and *Mr. Michael L. Gordon*, for appellee Cleveland Board of Education.

WILLIAM B. BROWN, J.    At the outset we direct our attention to the jurisdictional question presented by appellant's second proposition of law, which reads:

"Full compliance with Ohio Revised Code 5715.19 and 5715.13 is necessary to confer jurisdiction upon a county board of revision, notwithstanding that the complaint seeks an increase rather than a decrease of the taxable value of real estate."

In support thereof, appellant relies upon *Stanjim Co.* v. *Bd. of Revision, supra* (38 Ohio St. 2d 233), a *per curiam* opinion, wherein this court stated, at page 235, that: " * * * [F]ull compliance with R. C. 5715.19 and 5715.13 is necessary before a county board of revision is empowered to act on the merits of a claim."

The specific citations of statutory noncompliance on the part of appellees city of Cleveland and Cleveland Board of Education, are that the Board of Revision Form No. 1 (hereinafter BTA Form 1), used by both appellees in filing their complaints as to the assessment of real property, allegedly failed to "state the amount of overvaluation, undervaluation, discriminatory valuation, illegal valuation or incorrect determination complained of" as required by R. C. 5715.19, and failed to show the facts upon which such claims are based, as required by R. C. 5715.13.

R. C. 5715.13[3] only affects the power of a county board of revision to decrease valuations. Inasmuch as this case involves an *increase* in valuation, appellees were under no mandate to comply with R. C. 5715.13 and its concomitant requirement to "show the facts" upon which their claims were based.

In an action to increase land valuation, R. C. 5715.19 requires that "[e]ach complaint shall state the amount of * * * undervaluation * * * complained of." The BTA Form 1 filed by the Cleveland Board of Education concerning parcels 10 and 27 recites a "current assessed value" of $6,880, the "increase asked" as $7,970 and the "taxable value claimed" as $14,850. The BTA Form 1 filed by the city of Cleveland concerning parcel 2 recites a "current assessed value" of $5,180, the "increase asked" as $9,220 and the "taxable value claimed" as $14,400, and contains a notation which reads: "The requested increase

---

[3]R. C. 5715.13 reads:

"The county board of revision shall not decrease any valuation complained of unless the party affected thereby or his agent makes and files with the board a written application therefor, verified by oath, showing the facts upon which it is claimed such decrease should be made."

is based upon the sale of the subject property. Further information will be submitted at the time of the hearing.''

It is the opinion of this court that appellees satisfied the requirement of R. C. 5715.19 to specify ''the amount of * * * undervaluation,'' when they specified sums for ''increase asked.''

In its reply brief, appellant has raised, for the first time, the question of whether the city of Cleveland had standing to file the initial complaint with the board of revision. This court does not consider such tardily presented arguments (*Neil House Hotel Co.* v. *Bd. of Revision* [1946], 147 Ohio St. 231, paragraph one of the syllabus; *R. R. Donnelley & Sons Co.* v. *Porterfield* [1972], 30 Ohio St. 2d 219, 222; *Wesleyan University Press* v. *Donahue* [1966] 8 Ohio St. 2d 4, 5), and we therefore proceed to the merits of the appeal.

The ultimate question presented is whether the decision of the Board of Tax Appeals, which increased the assessed valuation of the subject parcels, is unreasonable or unlawful. *Buckeye Power* v. *Kosydar* (1973), 35 Ohio St. 2d 137, paragraph one of the syllabus.

In support of their claims for increasing the assessed valuation of parcels 2, 10 and 27, appellees rely upon the prices for which appellant purchased those parcels in July of 1973.

Appellant concedes that those sales were voluntarily negotiated between a willing seller and a willing buyer, but argues that ''special or necessitous circumstances'' existed which caused the sale prices to exceed the fair market value[4] of those parcels.

In determining the value of property for the purpose of taxation, the tax assessor must take into consideration

---

[4] Paragraph two of the syllabus in *In re Estate of Sears* (1961), 172 Ohio St. 443, describes "market value" as:

"Market value is the fair and reasonable cash price which can be obtained in the open market, not at a forced sale or under peculiar circumstances but at voluntary sale between persons who are not under any compulsion or pressure of circumstances and who are free to act; or, in other words, between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so."

*all* factors which affect the value of the property. *B. F. Keith Columbus Co.* v. *Bd. of Revision* (1947), 148 Ohio St. 253, paragraph one of the syllabus; *Western Industries* v. *Bd. of Revision* (1960), 170 Ohio St. 340, 342; *American Steel & Wire Co. of New Jersey* v. *Bd. of Revision* (1942), 139 Ohio St. 388, 392.

The price paid by appellant is one such factor, but "* * * is not a *controlling* factor in determining the assessed valuation of the property on the tax duplicate." (Emphasis added.) *Ramsey* v. *Bd. of Revision* (1943), 141 Ohio St. 366, 367. See *Bd. of Revision* v. *One Euclid Co.* (1968), 16 Ohio St. 2d 43.

Any other factors which allegedly bear upon the property's value must be presented to the board by way of competent evidence. Here, appellant produced seven, one-page appraisals which purported to show a variance between the sales price and the fair market value of certain parcels. However, the appraisals contain nothing which might serve to explain any such variance. Previous parcels purchased by appellant are not mentioned as comparable sales under the market-approach analysis to valuation. Also not mentioned is the possible influence on the market, and resultant fair market value, that a buyer determined to purchase an entire tract might have as parcel after parcel is acquired in the purchasing scheme.

This court finds that the board's apparent unwillingness to base its decision upon the appraisals offered by appellant was not unreasonable. We need only recall that the board is not required to adopt the valuation fixed by any expert or witness. *Hibschman* v. *Bd. of Tax Appeals* (1943), 142 Ohio St. 47, 48, and cases cited therein; *Benedict* v. *Bd. of Revision* (1959), 170 Ohio St. 62, 63; and *Shaker Square Co.* v. *Bd. of Revision* (1960), 170 Ohio St. 369, 371. Also, the board is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before the board (*American Steel & Wire Co. of New Jersey* v. *Bd. of Revision, supra* [139 Ohio St. 388], at 393; *Shaker Square Co.* v. *Bd. of Revision, supra* [170 Ohio St. 369], at 371; *Benedict* v. *Bd. of Revision, supra*

[170 Ohio St. 62], at 63), and courts will not disturb such determination unless a patent abuse of discretion is shown. *Benedict* v. *Bd. of Revision, supra*, at 63.

In support of its proposition that the true or intrinsic value of property may not be reflected by its sale price where the sale occurs amid "special or necessitous circumstances," appellant cites the following six cases from other jurisdictions.

The term "necessitous circumstances" appears in *State, ex rel. Lincoln Fireproof Warehouse Co.*, v. *Bd. of Review* (1973), 60 Wis. 2d 84, 208 N. W. 2d 380. However, that court found at pages 97-98, that such circumstances did not exist in the case where the seller, a railroad, had wished to sell to "a customer who would be interested in continuing the rail shipping business," and did sell to such customer, resulting in no requirement to pay a six percent real estate commission.

In *Nelson* v. *State Tax Comm.* (1973), 29 Utah 2d 162, 506 P. 2d 437, the court refused to reach the merits of the case, and only by way of an advisory opinion, at page 166, discussed the "exigencies which may exist in a sale in bankruptcy proceedings."

In *Equity Land Resources* v. *Dept. of Revenue* (1974), 268 Ore. 410, 521 P. 2d 324, the court found in favor of the taxpayer's contention that the sale price truly reflected the fair market value of the land. In words applicable to Ohio law, the court, at page 415, noted:

"* * * In the absence of being discredited by any special considerations or by comparable transactions which indicate that the price paid was out of line with other market data material, we believe it to be one of the best and most effective standards for the estimation of actual value although, admittedly, it is not conclusive. * * *"

In *Commonwealth, Inc.*, v. *Dept. of Revenue* (1971), 259 Ore. 140, 484 P. 2d 1103, the taxpayer contended, and the state taxing authorities *conceded*, that the purchase prices were, as a whole, excessive and not reflective of the market—certainly a different situation than is presented herein. However, the court proceeded to uphold the assess-

ment which had been based upon those purchase prices.

*Dept. of Revenue* v. *Anaconda American Brass Co.* (Ky. 1968), 435 S. W. 2d 65, involved 189 acres of land purchased by Anaconda in 1966 for $133,720 and assessed in 1967 at $133,000. The Board of Tax Appeals reduced the assessed value to $73,670, and the Kentucky Court of Appeals affirmed. Anaconda made the following case: that it had wished to purchase only 50 acres for industrial use; that the seller refused to sell only a part of the tract; and that the entire tract was purchased with 50 acres being devoted to industrial *use* and 139 acres being rented for agricultural *use*.

The court concluded, at page 67, that:

"* * * Anaconda had a peculiar need for a specific type of property—it was willing to and did pay a premium price to acquire the land especially adapted to its requirements."

Although appellant's business judgment may coincide with that of Anaconda, the Ohio Constitution would not sanction the result reached by the Kentucky court if applied to the present facts. Urban real estate, corporately owned, can be assessed solely upon the basis of its *value*, not upon its current *use*. Section 2, Article XII of the Ohio Constitution.

*Allied Chemical Corp.* v. *Union County Bd. of Supervisors* (Ky. 1974), 511 S. W. 2d 196, involved the value, for ad valorem tax purposes, of mineral rights (except coal) underlying what was then Camp Breckinridge. The seller, General Services Administration, after requiring the submission of sealed bids within two months, sold those rights to Allied for $27,747,743. The taxing authorities relied upon that sale price as taxable value.[5] Approximately eight months after the sale, Allied sought to reduce the tax valuation to $5,446,000 because, in the interim, testing and drilling, and geological and geophysical information ac-

---

[5]In Ohio such sale prices are not competent evidence of value. R. C. 5713.04, in pertinent part, reads:

"* * * The price for which * * * real property would sell at auction or forced sale shall not be taken as the criterion of its value. * * *"

quired, had indicated that the mineral rights were not worth as much as first supposed.

The court ruled that under such "peculiar circumstances," the sales price was of no probative weight in determining value.

Although, we do not disagree with that court's conclusion, we believe that the situation might be more amenable to analysis if the taxable *res* were not viewed as static. After all, if tests proved a high mineral content in the land, the purchase price would be an undervaluation. If further tests proved no mineral content, the purchase price would be a gross overvaluation. In the first situation the land *is* mineral land; in the second it is not mineral land. However, even if the mineral rights had no value, the surface estate could perhaps be valuable farmland.

We find that the foregoing cases cited by appellant lack persuasive force.

Recognizing that true value is a question of *fact* (*American Steel & Wire Co. of New Jersey* v. *Bd. of Revision, supra* [139 Ohio St. 388], at 391), this court also reaffirms the law of *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52, which states:

"The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful."

The decision of the Board of Tax Appeals is neither unreasonable nor unlawful, and it is, therefore, affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and P. BROWN, JJ., concur.

CELEBREZZE, J., concurs in the judgment only.