YOUNGSTOWN SHEET & TUBE COMPANY, APPELLANT AND CROSS-APPELLEE, *v.* MAHONING COUNTY BOARD OF REVISION ET AL., APPELLEES AND CROSS-APPELLANTS.

(No. 80-1361—Decided June 17, 1981.)

400

*Messrs. Porter, Wright, Morris & Arthur* and *Mr. Roger F. Day,* for appellant and cross-appellee.

*Messrs. Miller & Noga, Mr. Ronald B. Noga, Mr. Terry M. Miller, Mr. Vicent E. Gilmartin* and *Mr. Christopher Varley,* for appellees and cross-appellants.

SWEENEY, J.    The sole question presented is whether the decision of the BTA was unreasonable or unlawful. R. C. 5717.04. We do not sit either as a "super" Board of Tax Appeals or as a trier of fact *de novo. 3535 Salem Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 210, 212.

Youngstown contends that the BTA's valuation of the subject property was, under the circumstances of this case, unreasonable and unlawful because said valuation was not ascertained by determining true value in terms of the probable selling

price of the property in an arm's length transaction between a willing buyer and willing seller. See *State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412. Appellees and cross-appellants contend that the BTA's valuation was unlawful and unreasonable because the BTA did not find that the highest and best use of the subject property on the tax lien date was as a steelmaking facility. Appellees and cross-appellants contend further that the BTA erred in considering events subsequent to the January 1, 1977 tax lien date in reaching its valuation. The final issue raised by appellees and cross-appellants is whether the BTA must allocate value according to parcel number.

## I.

*Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13, paragraphs two, three and four of the syllabus, set forth three basic propositions that are relevant to this cause:

"The Board of Tax Appeals is not required to adopt the valuation fixed by any expert or witness. (*Hibschman* v. *Bd. of Tax Appeals,* 142 Ohio St. 47; *Benedict* v. *Bd. of Revision,* 170 Ohio St. 62; *Shaker Square Co.* v. *Bd. of Revision,* 170 Ohio St. 369, approved and followed.)

"The Board of Tax Appeals is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before the board. (*American Steel & Wire Co. of New Jersey* v. *Bd. of Revision,* 139 Ohio St. 388; *Shaker Square Co.* v. *Bd. of Revision,* 170 Ohio St. 369; *Benedict* v. *Bd. of Revision,* 170 Ohio St. 62, approved and followed.)

"The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful. (*Bd. of Revision* v. *Fodor,* 15 Ohio St. 2d 52, approved and followed.)"

Youngstown structures its argument to avoid a direct collision with the *Cardinal* principles by controverting the precise method used by the BTA to determine value instead of

directly disputing the end result of the methodology which is, of course, a dollar amount valuation. Youngstown summarizes its position in this manner:

"***[T]he 'market' approach is the only appraisal method applicable for determining the fair market value (true value) of the old, outmoded Youngstown plants. No other appraisal technique can possibly indicate the approximate amount of money that a perspective [*sic*] purchaser would have paid for the plants in 1977. ***[O]nly the American Appraisal [Youngstown's appraiser] Reports introduced at trial valued all the Youngstown properties by the 'market approach.'*** Since there was no other acceptable evidence of true value whatever before the Board from which it could ascertain fair market value, the Board should have adopted the American Appraisal Valuations." (Emphasis deleted.)

Even though Youngstown couches its argument in methodological terms, this argument taken to its logical conclusion would require the BTA to adopt the valuation fixed by Youngstown's experts. Such a requirement would be contrary to the rules expressed in paragraphs two and three of the syllabus in *Cardinal, supra.* We decline to bind the BTA to a particular method of valuation because the imposition of rigid methodological strictures would necessarily impinge upon the BTA's wide discretion to weigh evidence and assess the credibility of witnesses.

The BTA did not specifically state whether it based its valuation of the subject property on the "market" or the "cost" approach to valuation; nor was it required to do so. In *American Steel & Wire Co.* v. *Bd. of Revision* (1942), 139 Ohio St. 388, this court, at page 391, stated that:

"With respect to these [valuation] methods it should be observed that, while reproduction cost, depreciation, opinions as to market value, and income may be given proper consideration, true value is a question of fact to be determined by the taxing authorities. It does not appear from the record that the Board of Tax Appeals applied any particular method exclusively but merely determined the true value of the buildings on each parcel from all the evidence. This course was in conformity to law."

The BTA made its true value determination "[a]fter care-

fully considering the entire record," which is in essence the same standard this court approved in *American Steel & Wire Co., supra.* This approach is reasonable and lawful; Youngstown's contentions to the contrary are without merit.

In short, the Board of Tax Appeals is not required to adopt the appraisal methodology espoused by any expert or witness.

## II A.

Appellees and cross-appellants' first and third propositions of law call into question the factual underpinnings of the BTA valuation.[5] MCBR contends that "it was the responsibility of the Board of Tax Appeals***to place itself in the center of the Youngstown Sheet & Tube complex as of January 1, 1977; to determine the highest and best use of the property as of that date; and to value the property in accord with that highest and best use for tax year 1977." Flowing from this characterization of the BTA's responsibility are the further contentions that the BTA erred first in factoring the September 1977 shutdown announcement into its valuational calculus and secondly in confusing the *announcement* of plant closings with the actual shutdowns of the steelmaking facilities, some of which did not occur until after the end of the tax year at issue.

We reject appellees and cross-appellants' limited view of the BTA's responsibility. While the BTA must determine value as of the tax lien date, it must also consider all the circumstances surrounding the property to be valued. The BTA cannot ignore events prior and subsequent to the tax lien date that affect the true value of the subject property on the tax lien date. As this court stated in *American Steel & Wire Co. v. Bd. of Revision, supra:*

---

[5] Appellees and cross-appellants' proposition of law No. 1 states:

"The Board of Tax Appeals acted unreasonably and unlawfully in failing to find that the highest and best use of appellants real property as of January 1, 1977 was as a steelmaking facility. The Board of Tax Appeals further erred in failing to value appellant's real property for tax year 1977 in accord with such finding."

Proposition of law No. 3 states:

"The Board of Tax Appeals erred in reducing the true value of all Youngstown Sheet & Tube's real property on the basis of a finding that the plant had shutdown in late 1977 when evidence adduced at the board revealed that substantial portions of the steel mill continued to operate well into 1979."

"In determining the value of land or the improvements thereon all the facts and circumstances relating to the nature of the property, its availability for the purpose for which it was constructed or for any other purpose for which it may be used, its obsolete character, if such it has, and every other factor that tends to prove the true value in money of the land and the improvements thereon, and *evidence of facts occurring after as well as before the tax lien day of the year involved within reasonable limitations are admissible." Id.* at 392. (Emphasis added.) See, also, R. C. 5715.01 ("in determining true value***all facts and circumstances***shall be used").

The BTA utilized the following rationale:

"Thus, the Board must consider the reality that the subject property was producing steel on January 1, 1977. However, the Board likewise cannot ignore the fact that steel production was greatly curtailed in September 1977 and thereafter, since the causes for such shutdown were evident on tax lien date."

Appellees and cross-appellants narrowly focus on the use of the subject property for steelmaking on January 1, 1977, and describe Youngstown as a going concern on that date. Youngstown's substantial losses in 1975 and 1976 belie the "going concern" description. Notwithstanding the subject property's continued use for steel production as of the tax lien date, Youngstown was a going-out-of-business concern. The September 1977 shutdown announcement did little more than confirm the inevitable. Under these circumstances BTA acted lawfully and reasonably in considering pre- and post-tax lien date factors that affected the true value of Youngstown's property on January 1, 1977.

## II B.

Appellees and cross-appellants' second and fourth propositions of law raise issues of appraisal methodology.[6] Our discus-

---

[6] Appellees and cross-appellants' proposition of law No. 2 states:

"The appraisals submitted by appellee/cross appellant Mahoning County Board of Revision, constituted the only evidence before the Board of Tax Appeals of true value of the property in issue as those appraisals were founded on assumptions conducive to finding true value as defined in statute and case law."

Proposition of law No. 4 states:

"The Board of Tax Appeals did not err in declining to adopt the valuation figures

sion in Part I of this opinion is dispositive of these issues; the BTA is not bound to adopt any particular method of valuation to the exclusion of other methods in its determination of true value.

## II C.

Appellees and cross-appellants' final proposition of law deals with a procedural matter. The question is whether the BTA erred in failing to specify true value for each individual parcel of the subject property. The BTA valuations were based on the aggregate values of the three Youngstown plant sites. The three plant sites, however, contain some 14 individual parcels, which are located in three separate taxing districts. As a consequence of the BTA's aggregate plant site valuations, the Mahoning County Auditor cannot allocate true value on a per parcel basis pursuant to his statutory duty. R. C. 5713.01. Therefore, it is incumbent on the BTA on remand to break down its aggregate plant site valuations into individualized parcel values before certifying its decision and order to the county auditor.

The decision of the Board of Tax Appeals is affirmed as to its valuation of the subject property, but the cause is remanded for an allocation of value on a per parcel basis.

*Decision affirmed and cause remanded.*

CELEBREZZE, C. J., SHANNON, MAHONEY and C. BROWN, JJ., concur.

LOCHER and HOLMES, JJ., dissent.

SHANNON, J., of the First Appellate District, sitting for W. BROWN, J.

MAHONEY, J., of the Ninth Appellate District, sitting for P. BROWN, J.

LOCHER, J., dissenting. I agree with the majority that we should remand this case to the Board of Tax Appeals ("BTA"). I would, however, reverse.

championed by the Youngstown Sheet & Tube Company because those figures were derived through indulgence of the unfounded assumption that property which was a functioning steel mill complex on January 1, 1977 was not on that date suitable for utilization as a steel producing enterprise."

The majority correctly states that the issue in this case is whether the BTA's decision is unreasonable or unlawful. To resolve this issue, however, it is necessary to review the manner in which the BTA reached that decision.

The BTA is allowed "wide discretion in determining the weight to be given to evidence and the credibility of witnesses***." *Cardinal Federal S. & L. Assn. v. Bd. of Revision* (1975), 44 Ohio St. 2d 13, paragraph three of the syllabus. Nevertheless, R. C. 5717.04 permits reversal of a BTA decision when it is "unreasonable or unlawful." On direct appeal, this court has consistently reviewed the record before the BTA in order to determine whether there is evidence supporting the BTA's decision. See, *e.g., Cardinal Federal S. & L. Assn., supra; Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53, 58; *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 139; *Bd. of Revision* v. *One Euclid Co.* (1968), 16 Ohio St. 2d 43, 46; *L. E. Shunk Latex Products, Inc.,* v. *Evatt* (1942), 140 Ohio St. 289, 292; *Bd. of Education* v. *Evatt* (1940), 136 Ohio St. 283, 286. Accordingly, the evidence before the BTA deserves a closer examination.

As stated by the majority, there were primarily two competing appraisals before the BTA. Youngstown Sheet and Tube Company ("YST"), appellant, offered an appraisal stating that the value of the property was $9,070,000. The Mahoning County Board of Revision ("MCBR") submitted an appraisal in the amount of $27,898,700. The BTA determined the value of the property to be $17,774,000. This amount is approximately 48 percent of the sum of the appraisals submitted by the taxpayer and the board of revision.

In its decision and order, the BTA did not state any rationale or basis in the evidence leading to its conclusion. BTA merely stated that it reached this result "[a]fter carefully considering the entire record."

On remand, BTA will realize the difficulty with this approach. The majority has ordered that BTA determine the value for each parcel at each of several locations. BTA, however, has merely stated a conclusory value, $17,774,000, without articulating the basis for this conclusion. It is difficult to imagine how one is to consistently establish a value for the parts when the process of evaluating the whole remains a

mystery. Accordingly, result-oriented appraisals will be necessary. The total value of the parcels must equal the predetermined sum, $17,774,000, and appraisers may have to modify their estimates in order to conform to this constraint.

This court should encourage and uphold the integrity of the appraisal process. Appraisals are valuable evidentiary and administrative tools. Nevertheless, BTA's approach taints the appraisal process. Taxpayers, tax collectors and appraisers well know that for every additional $1,000,000 one's appraisal differs from that of an adversary BTA may fix a valuation which is approximately $500,000 closer to the desired extreme. Likewise, on remand, one has to be skeptical about the independence of an appraiser's judgment when the total value of several parcels is fixed.

A closer examination of *Cardinal Federal S. & L. Assn., supra,* demonstrates how this result could have been avoided. In *Cardinal,* the taxpayer had recently purchased the last of several lots in the same area for development. Cardinal argued that the taxing authorities should adopt a four-year-old appraisal for its valuation. BTA, however, correctly preferred the sale value even though Cardinal's other interests in the area might have increased the sale price. The question, therefore, was whether the sale price or appraisal value should control. This court has consistently held that the sale price is the best method for the "true value in money" of property. See, *e.g., Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129; *State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, certiorari denied 379 U.S. 818. It is in this context that the second paragraph of the syllabus in *Cardinal, supra,* reads: "The Board of Tax Appeals is not required to adopt the valuation fixed by *any* expert or witness." (Emphasis added.) The *Cardinal* court correctly refused to put BTA in a theoretical strait jacket. That is, BTA is not required to accept *any particular* appraisal theory. BTA's findings, however, must be based on the evidence in the record.

Finders of fact are often faced with difficult choices. They must decide which witnesses are more credible and how much weight to give to each item of evidence. In this case, however, BTA effectively chose the middle ground between a high

appraisal from MCBR and a low one from YST. BTA seems to have merely added up the competing appraised values and divided by the number of parties. This approach has qualities similar to that of a quotient verdict. Jurors are not permitted to resolve a case through a quotient verdict because this process circumvents their duty to weigh the evidence *in the record* and make findings of fact. This analogy to a quotient verdict is compelling. Our abhorrence to BTA's approach should be equally compelling.

In order to resolve the dispute between YST and MCBR, BTA contrived a Solomon-like solution. Rather than find the facts, BTA decided to split the difference. Regrettably, this is also a Solomon-like result—neither reasonable nor lawful.

Accordingly, I would reverse and remand for further proceedings consistent with this opinion.

HOLMES, J., dissenting. I must dissent in that I feel under the circumstances of this case the Board of Tax Appeals failed to apply the appropriate and reasonable standard in determining the true value of this property.

I am in agreement with the basic principle of law that this court will not interfere with a determination of the Board of Tax Appeals as to the fair market value of property unless such determination is unreasonable or unlawful.

I am also in agreement that the Board of Tax Appeals is, as a general rule, not bound to follow and apply the appraisal techniques and principles as advanced by either the taxpayer or the tax assessor. However, consideration must be given in the particular instance as to the appropriate methodology applicable to the particular property assessed, and the surrounding circumstances, including the business market in which the taxpayer and the specific property are engaged.

Here, I believe that the determination of the Board of Tax Appeals is unreasonable because of the current depressed economic factors which have played such a significant role in the deterioration of the potential industrial usage of this property of this taxpayer. I am in agreement with the position of the appellant Youngstown that:

"* * * [T]he 'market' approach is the only appraisal method applicable for determining the fair market value (true value) of

the old, outmoded Youngstown plants. No other appraisal technique can possibly indicate the approximate amount of money that a perspective [*sic*] purchaser would have paid for the plants in 1977. ***[O]nly the American Appraisal [Youngstown's appraiser] Reports introduced at trial valued all the Youngstown properties by the 'market approach.' ***Since there was no other acceptable evidence of true value whatever before the Board from which it could ascertain fair market value, the Board should have adopted the American Appraisal Valuations.***"

Here, because of the depressed industrial steel manufacturing market in this country generally and the depressed manufacturing usage of this particular property, the fair market value approach to appraising this property for tax purposes should have been utilized by the board. In substantiation of the assertion of the appellant that this property should not be appraised as an ongoing steel producing firm is the evidence that subsequent to the shut-down of this plant, a federal government loan or subsidy, which had been applied for by a Youngstown community group to rehabilitate the plant, was denied on the basis that the project was not "economically viable."

I would reverse the board and remand for a redetermination of the true value for tax purposes.