GOVERNOURS SQUARE
APARTMENTS,
Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, William L. Long, Chairman, Gordon E. McIntyre, Member, Durwood S. Strang, Member, Respondents.

GOVERNOURS SQUARE
APARTMENTS III,
Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, William L. Long, Chairman, Gordon E. McIntyre, Member, Durwood S. Strang, Member, Respondents.

TOULON SQUARE
APARTMENTS, Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, William L. Long, Chairman, Gordon E. McIntyre, Member, Durwood S. Strang, Member, Respondents.

GOVERNOURS SQUARE
APARTMENTS II,
Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, William L. Long, Chairman, Gordon E. McIntyre, Member, Durwood S. Strang, Member, Respondents.

GOVERNOURS SQUARE
APARTMENTS I,
Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, William L. Long, Chairman, Gordon E. McIntyre, Member, Durwood S. Strang, Member, Respondents.

Nos. 49T05–8609–TA–00014 to 49T05–8609–TA–00018.

Tax Court of Indiana.

Dec. 2, 1987.

Joseph D. Geeslin, Jr., Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondents.

FISHER, Judge.

The petitioners comprise a multi-family housing development known as Wingate Apartments. Wingate Apartments consists of 852 apartment units located on approximately 51.6 acres of land in Warren Township, Marion County, Indiana. The assessment date at issue is March 1, 1979. A Warren Township Deputy Assessor, claiming that economic obsolescence had been incorrectly allowed by the Marion County Board of Review, appealed these causes to the Indiana State Board of Tax Commissioners. The State Board denied any allowance for economic obsolescence. The petitioner claims that a deduction for economic obsolescence should have been allowed.

IC 6–1.1–31–1(a) provides that the State Board shall promulgate rules and regulations concerning assessment of tangible property. IC 6–1.1–31–5(a) provides that the rules and regulations promulgated by the State Board are the basis for determining true cash value. Accordingly, Regulation 17, entitled "Indiana Real Property Appraisal Manual," was promulgated to "constitute the only basis for the determination of value in effecting the reassessment.... All taxing officials are required by [statute] to comply with this regulation." P. G–iv(c). Regulation 17 may be found in the Indiana Administrative Code at 50 IAC 1–1–1 *et seq.*

Regulations 50 IAC 2–1–8 and 50 IAC 2–1–9 are instructions for applying cost and income approaches to determine true cash value. The regulations do not autho-

rize the use of the market approach to make such determination.

Economic obsolescence is a factor in the cost approach and is defined:

> a condition caused by factors extraneous to the property itself, such as changes in population characteristics and economic trends, encroachment of inharmonious land uses, excessive taxes, and governmental restrictions. The condition is generally incurable in that the causes lie outside the property owner's realm of control. 50 IAC 2–1–8.

Economic obsolescence "can be measured by capitalizing the estimated loss in rental due to the deficiency." *Id.* 50 IAC 2–12–1 lists some of the common causes of economic obsolescence:

> —Zoning laws and other governmental regulations which affect the usage and operation of the property.
> —Building code requirements which set current acceptable construction standards.
> —Market acceptability of the product or services for which the property was constructed or is currently used.
> —Profitability of the operation of the property and the justifiable investment which the business would support.
> —Termination of need for the property due to actual or probable changes in economic or social conditions.

The penultimate cause is significant to this case and may be determined by use of the income approach as provided by 50 IAC 2–1–9.

The petitioner supported its contention by submitting data to the State Board which, when analyzed under the income approach, could indicate economic obsolescence. However, the issue before this Court is not whether the taxpayer's data and calculations are correct, but whether in denying an economic obsolescence allowance, the State Board correctly followed 50 IAC 2–1–9.

The State Board's written findings indicated that the basis for the denial of economic obsolescence was economic analysis. The evidence indicates that such economic analysis consisted of three components: 1) the petitioner's vacancy rate for 1978; 2) a comparison of the gross rent for the petitioner's property with the gross rents of like properties in Marion County; and 3) the application of a gross rent multiplier to the gross rent submitted by the petitioner to establish a true cash value.

The data submitted by the petitioner for 1978 showed a vacancy rate of 3.74%, which in and of itself does not suggest any obsolescence. The taxpayer also submitted data for 1979 and 1980, which was totally disregarded by the State Board because the bulk of the data consisted of vacancy rates, income received, and expenses incurred after the tax lien date. The vacancy rate for 1979 was 24.3%.

 IC 6–1.1–1–2 provides that the appraisal date is March 1 of the year of assessment. In determining true cash value, "only facts as they exist on the first day of March of each year are material to the determination of questions of assessment and valuations of property for purposes of taxation." *Stark v. Kreyling* (1934), 207 Ind. 128, 132, 188 N.E. 680, 681. However, no Indiana decision appears to address whether evidence from prior or subsequent years can be utilized to establish the facts on the tax lien date. In *Youngstown Sheet & Tube Company v. Mahoning County Board of Revision* (1981), 66 Ohio St.2d 398, 422 N.E.2d 846, the court held that the events occurring prior to and subsequent to the tax lien date that affect the tax value of the subject property on the tax lien date should not be ignored. In the case at bar, if the data for 1979 and 1980 help to establish a fact existing on March 1, 1979, such data should be utilized. In this case, the State Board ignored the data for 1979 and 1980 without analyzing it to determine whether it was relevant to the true value of the property on March 1, 1979.

The hearing officer compared the gross rent reported by the petitioner with gross rent reported by other taxpayers from similar properties in Marion County. He concluded that the petitioner's gross income was in line with gross income reported by

similarly situated taxpayers. While helpful when considered along with other factors, the comparison is meaningless by itself. Gross income comparisons are not provided for in Regulation 17, and gross income is only part of the data to be considered under the income approach.

■ The hearing officer applied a gross rent multiplier to the gross income provided by the petitioner for 1978. It is not clear from the evidence exactly how the gross rent multiplier was determined in this case. However, it appears that it was a factor arrived at by analyzing gross rents of similar properties and developing a capitalization rate from such gross rents, multiplying that rate by 100, and then multiplying the product by the reported gross rent, resulting in the true cash value. The multiplier is based on gross income and is applied to gross income. 50 IAC 2-1-9 requires the analysis of expenses as well as income. The State Board's use of a gross rent multiplier to determine that no economic obsolescence allowance was warranted is contrary to Regulation 17 and, hence, contrary to law, since expenses were not factored into the multiplier.

■ The petitioner submitted expense data for 1978, 1979, and 1980 and requested the State Board to contact petitioner's counsel if any question or verification was needed. The hearing officer rejected such data because the expenses were not, in his judgment, in line with similar expenses of similar property or were not sufficiently detailed. The hearing officer did not ask the petitioner for verification because "on numerous occasions he had asked for additional information [from other taxpayers] and had not received it." This is not a valid reason for not requesting verification. Even where verified data is absent, 50 IAC 2-1-9 provides guidelines to be used in several expense categories. In this case, the hearing officer disregarded such guidelines, as well as all of the expenses submitted.

In summary, the hearing officer made no attempt to determine if the data submitted for 1979 and 1980 had any relevance to the tax lien date, and he neither requested veri-fication of the expense data nor used the guidelines provided by the regulations. He compared the petitioner's gross rent with gross rents of similar properties and he applied a gross rent multiplier to the gross rent reported, resulting in a value. Since such value was not significantly different from the value determined by using the cost approach without an allowance for economic obsolescence, the hearing officer recommended no economic obsolescence allowance be granted. For the reasons stated, however, the economic analysis used was contrary to the regulations, and hence contrary to law.

■ While not stated by counsel as an issue apart from determining economic obsolescence, it also appears that the State Board failed to consider the "profitability or earning capacity" or "capitalization of income received from the use of real property" as provided for in Regulation 17. *State Board of Tax Commissioners v. Valparaiso Golf Club, Inc.* (1975), 164 Ind. App. 687, 330 N.E.2d 394.

IT IS THEREFORE ORDERED that the determination made by the State Board be set aside, and this cause is remanded for further consideration and action consistent with this opinion.