CINCINNATI MILACRON INDUSTRIES, INC., APPELLEE, ET AL., *v.*
BROWN COUNTY BOARD OF REVISION; HURT, AUDITOR, APPELLANT.

[Cite as Cincinnati Milacron Industries, Inc. *v.* Brown Cty. Bd. of Revision
(1988), 35 Ohio St. 3d 32.]

(No. 86-1563—Decided January 13, 1988.)

*Frost & Jacobs, Samuel McW. Scoggins* and *Jeffrey A. Lipps,* for appellee.

*R. Allan Corbin,* prosecuting attorney, and *James R. Gorry,* for appellant Dallas D. Hurt.

*Per Curiam.* In his first proposition of law, appellant asserts that absent any credible evidence demonstrating the taxpayer's right to a valuation reduction, the BTA must affirm the valuation determinations of the board of revision. In support of this proposition, appellant cites a number

of decisions which hold that a taxpayer bears the burden of proving that he is entitled to a reduction in the taxable value of the real property in issue. *Higbee Co.* v. *Evatt* (1942), 140 Ohio St. 325, 332, 23 O.O. 543, 545, 43 N.E. 2d 273, 276; *Rollman & Sons Co.* v. *Bd. of Revision* (1955), 163 Ohio St. 363, 56 O.O. 337, 127 N.E. 2d 1, paragraph one of the syllabus; *Western Industries, Inc.* v. *Bd. of Revision* (1960), 170 Ohio St. 340, 342, 10 O.O. 2d 427, 164 N.E. 2d 741, 743.

While appellant is correct in identifying the taxpayer's burden when seeking a reduction in the valuation of property, this does not affect the authority of the BTA when reviewing a determination of the board of revision. Pursuant to R.C. 5717.01, the BTA may limit its review to the record and the evidence certified to it by the board, hear additional evidence from the parties, or make such other investigation of the property as is deemed proper. Moreover, this court has interpreted R.C. 5717.03 as permitting the board to render its own independent decision as to the valuation of the property in issue. *Coventry Towers, Inc.* v. *Strongsville* (1985), 18 Ohio St. 3d 120, 18 OBR 151, 480 N.E. 2d 412.

Next, appellant challenges the credibility of the appraisal reports submitted by appraiser Bounds in support of appellee's requested valuation reductions. Appellant first attacks the validity of appellee's market approach on the grounds that the appraisal reports attempt to compare unlike things. Appellant asserts that Bounds' appraisal reports describe the buildings in issue as having a "heavy steel frame," being "well built," in "very good" physical condition and as "good quality [industrial] building[s]," and that these descriptions do not comport with the comparable properties used in the market approach.

As a secondary basis for distinguishing the comparable properties from the properties in issue, appellant argues that Bounds did not properly consider the highest and best use of the comparable properties. Pursuant to Ohio Adm. Code 5705-3-07(A), the county auditor, in arriving at the true value in money of land, must consider among other factors not only the present use of the land but also its highest and best probable legal use consistent with the legal zoning and building regulations. Bounds' reports concluded that the highest and best use of the properties in issue was for manufacturing purposes. It is alleged that the comparable properties used in the market approach did not have a similar "highest and best use."

Lastly, appellant vigorously contests the use of sale I2 as a comparable property in the market approach analysis. Bounds acknowledged that his analysis of this property was premised upon an understanding that it was in a finished condition. However, during his testimony before the BTA, he stated that, through subsequent information, he became aware that this building was actually a half completed shell with no floor, no interior walls, no heating, and no industrial wiring. This discrepancy is said to invalidate the results of the market approach.

Appellant's attempt to persuade this court that the appraisal reports submitted by Bounds compared unlike things is not well-taken. According to *State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 25 O.O. 2d 432, 195 N.E. 2d 908, certiorari denied (1964), 379 U.S. 818, one measure of the true value of property is the price at which property should change hands on the open market between a willing buyer and a willing seller, neither being under compulsion to buy or to sell. Moreover, this

court has approved considerations of the effect of current market sales at the time of the valuation. *American Steel & Wire Co.* v. *Bd. of Revision* (1942), 139 Ohio St. 388, 392, 22 O.O. 445, 446, 40 N.E. 2d 426, 428. During testimony before the BTA, Bounds stated that the inferior structure of some of the comparable properties was offset by their locations which were accessible to large metropolitan areas and that this would enhance their market value. Clearly, the location of an industrial facility would constitute a market consideration which would affect a structure's true market value. Bounds also stated that in choosing the four properties as subjects for his comparative analysis, he considered the age and physical characteristics of the buildings such as the ceiling heights, the amount of office space, total floor space, walls, floor, floor composition, and internal mechanicals. These factors would substantiate the comparability of these properties with the properties in issue.

Appellant's highest-and-best-use argument is equally unfounded. The first comparable property, sale I1, was originally constructed to fabricate cardboard boxes. Although it is currently used as a warehouse for non-prescription drugs, there is ample evidence to suggest that the building may still be used to house a manufacturing endeavor. In addition, sale I3 was originally built as a warehouse, but is now used for manufacturing purposes.

In regard to appellant's objections to the use of sale I2 in the market approach, we note that in spite of the fact that Bounds' analysis of this particular property was based on incorrect information, he nevertheless reaffirmed his belief as to the correctness of his reports, stating, "I gave very little weight to that property because I knew it was a low relative price * * *."

Although appellant does raise some legitimate questions as to the reliability of this particular sale as comparable property, appellant does not establish that this particular property formed the basis of Bounds' valuation appraisals. The BTA, as the finder of fact, is vested with wide discretion in determining the weight to be given to evidence and the credibility of witness who come before it. This court will not disturb a decision of the BTA as to the valuation of property for tax purposes unless it affirmatively appears from the record that such decision is unreasonable or unlawful. *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13, 73 O.O. 2d 83, 336 N.E. 2d 443, paragraph four of the syllabus.

In his final proposition of law, appellant attacks the validity of Bounds' cost-approach analysis on the grounds that he valued the plants as "average" quality as opposed to "good" quality. It is also contended that Bounds substantially underestimated the reproduction costs of the properties in issue by omitting the architect's fee and site development costs in the analyses.

Appellant's proposition as to the cost approach is totally unfounded. Although Bounds did use the cost approach in his analyses, he specifically stated that he did not base his ultimate conclusion as to the valuation of the properties upon this approach. Rather, he used the cost-approach analyses as a means of evaluating the reasonableness of the result he derived under the market approach. Hence, any objection as to the cost-approach analysis is without basis.

For the reasons set forth in this opinion, we affirm the decision of the BTA.

*Decision affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.