[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 601.]

FAWN LAKE APARTMENTS, APPELLANT, *v*. CUYAHOGA COUNTY BOARD OF

REVISION; OLMSTED FALLS BOARD OF EDUCATION, APPELLEE.

[Cite as *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 1996-Ohio-443.]

*Taxation—Real property—Valuation of apartment complex by Board of Tax Appeals reasonable and lawful, when.*

(No. 95-1151—Submitted February 1, 1996—Decided June 19, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-D-954.

_____

{¶ 1} Fawn Lake Apartments, appellant, owns eleven apartment buildings containing 288 units. The complex includes 264 garden units and 24 townhouse units. Its recreation building houses a party room, office, and fitness center. The complex also contains a swimming pool, tennis courts, lake with bridge and associated asphalt paving, concrete curbs and walks, and landscaping.

{¶ 2} For tax year 1991, the Cuyahoga County Auditor placed a true value of $7,743,000 on the property. Fawn Lake and the Olmsted Falls Board of Education ("BOE"), appellee, each filed a complaint with the Cuyahoga County Board of Revision ("BOR"). Fawn Lake claimed the true value of the property to be $7,250,000; the BOE claimed a value of $8,517,300. After hearing and review, the BOR affirmed the auditor's value. Fawn Lake then appealed the BOR's decision to the Board of Tax Appeals ("BTA").

{¶ 3} At the BTA, Fawn Lake presented the expert real estate appraisal testimony of Robert J. Kocinski, a member of the Appraisal Institute. He testified that the true value for the property was $7,000,000. The BOE presented the expert real estate appraisal testimony of Sam D. Canitia, a senior member of the Society of Real Estate Appraisers and a senior member of the American Society of Appraisers. He testified that the true value of the property was $9,214,000.

**{¶ 4}** After reviewing the testimony and reports of the appraisers, the BTA chose to value the property along the lines of Kocinski's income approach to value. In this approach, Kocinski gave primary weight to actual rentals in estimating income and closely followed actual expenses in estimating expenses. He also deducted $56,320 as a reserve for replacements. After discussing financing concerns, bank tendencies, and market indications, he selected a capitalization rate of 10.25 percent and added a tax factor of 2.29 percent. He estimated the true value of the property via the income approach to be $7,150,000.

**{¶ 5}** Though choosing this approach to determine true value, the BTA did change some of its elements. First, the BTA concluded that Fawn Lake repaired and replaced items as needed and that Fawn Lake had included these replacement costs in actual ongoing operating costs. The BTA did not see any propriety in deducting a reserve for replacements as Kocinski had, since Kocinski's costs were virtually the actual costs to operate the property. Second, the BTA determined that Kocinski's capitalization rate information was vague and unsubstantiated. Instead, the BTA selected Canitia's capitalization rate of nine percent because it was more comprehensible and realistic. He had extracted it from a survey by life insurance companies that had committed $100,000 or more on multi-family and nonresidential mortgages.

**{¶ 6}** The BTA rejected Kocinski's and Canitia's final opinions of value, and recalculated Kocinski's income approach to value with the above-mentioned changes. Accordingly, it determined the true value for the property for tax year 1991 to be $8,291,810.

The cause is now before this court upon an appeal as of right.

*Fred Siegal Co., L.P.A.,* and *Annrita S. Johnson*, for appellant.

*Kolick & Kondzer, Daniel J. Kolick* and *John P. Desimone*, for appellee.

—————————————

***Per Curiam.***

**{¶ 7}** Fawn Lake contends that the BTA should have deducted a reserve for replacements, employed a capitalization rate that reflected current returns on mortgages and equities, and agreed with its appraisal testimony. However, we disagree and affirm the BTA's decision.

**{¶ 8}** In *Freshwater v. Belmont Cty. Bd. of Revision* (1991), 58 Ohio St.3d 140, 568 N.E.2d 1215, we held that a reserve for replacements was a proper item to consider in valuing real property. However, we did not mandate that such a reserve be accounted for in all cases. Here, the BTA, essentially, found that the actual expenses of the property, which Kocinski followed closely, contained a reserve for replacements. Thus, it chose not to deduct further amounts for replacements.

**{¶ 9}** Kocinski's testimony supports this conclusion. He testified that Fawn Lake did not set aside a replacements reserve, but capitalized replacement items as it needed them. Since this testimony supports the BTA's finding of fact, we affirm. *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St. 2d 47, 19 O.O. 3d 234, 417 N.E. 2d 1257, syllabus.

**{¶ 10}** As to the capitalization rate, the BTA criticized Kocinski's rate as unsupported. Again, the evidence, the survey of life insurance companies' mortgage commitments, supports Canitia's capitalization rate selection. As to Canitia's obtaining the rate from an annual survey rather than a quarterly study completed near the tax lien date, the BTA "may consider pre- and post-tax lien date factors that affect the true value of the taxpayer's property on the tax lien date." *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 20 O.O.3d 349, 422 N.E. 2d 846, paragraph two of the syllabus.

**{¶ 11}** Finally, as to Fawn Lake's claim that its evidence better evaluated the property than the BOE's evidence, we do not find that the BTA abused its discretion in believing the testimony that it did. *Wolf v. Cuyahoga Cty. Bd. of*

*Revision* (1984), 11 Ohio St. 3d 205, 11 OBR 523, 465 N.E. 2d 50. This weighing of evidence and granting of credibility is exactly the BTA's statutory job.

{¶ 12} Accordingly, we affirm the decision of the BTA because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., CONCUR.

WRIGHT, J., not participating.

_____