DAK, PLL, APPELLANT, v. FRANKLIN COUNTY
BOARD OF REVISION ET AL., APPELLEES.

[Cite as *DAK, PLL v. Franklin Cty. Bd. of Revision,*
105 Ohio St.3d 84, 2005-Ohio-573.]

(Nos. 2003–0433 through 2003–0445—Submitted February 2, 2005—Decided March 2, 2005.)

PER CURIAM.

{¶ 1} Appellant, DAK, PLL ("DAK") has filed appeals contesting the valuation by the Board of Tax Appeals ("BTA") of 13 condominium units that DAK owns. These appeals have been consolidated for purposes of hearing and decision.

{¶ 2} The 13 units whose values are being contested are located in Downing Place, a 31–unit condominium complex on Bethel Road in Columbus. The Downing Place complex consists of six buildings: two buildings containing eight units each, three buildings containing four units each, and one building containing three units. One of the four-family buildings faces Bethel Road, while the others are located behind the Bethel Road building. The garages for the units are separate from the residential buildings.

{¶ 3} David A. Kelly, one of two partners in DAK, testified that as of the date of the BTA hearing, DAK owned 20 of the 31 condominiums at Downing Place. Kelly stated that he was president of the Downing Place condominium board. In a single transaction in July 1994, DAK purchased ten of the contested units for a total price of $460,000. In September 1994, DAK purchased another unit for $45,000. In November 1996, DAK purchased the last two of the 13 contested units for a total price of $87,000.

{¶ 4} The Franklin County Auditor valued seven of the units at $56,100 each and six units at $56,200 each. When DAK filed its valuation complaints for the 13 units with the Franklin County Board of Revision ("BOR") for tax year 1999, it listed the purchase prices of the units as their market value. After a hearing, the BOR affirmed the auditor's valuation for each of the 13 units, and DAK filed appeals with the BTA.

{¶ 5} In addition to the 13 units being contested, DAK owns another seven units at the Downing Place complex. Four of those units were purchased from one seller in July 1999 for $46,000 per unit. DAK purchased two more units from another seller in July 1999 for $44,000 per unit. These six units were valued by the BOR at their purchase prices for tax year 1999. DAK's most recent purchase at Downing Place was in February 2002, when it purchased a unit for $50,000.

{¶ 6} DAK rents the Downing Place units for amounts from $630 to $700 per month. The renters pay their own utilities, and DAK pays the condominium fees. The units are all essentially the same size. However, there is a distinction between an end unit and an interior unit. The end units have a bay window in

the kitchen and a brick fireplace in the living room, while the interior units have no bay window, and the fireplace is built into the corner on the wall between the kitchen and living room.

{¶ 7} Kelly testified that he had put a lot of "sweat equity" into the property and that he had painted, replaced carpeting and linoleum, and replaced the fences outside, and, as a result, there had been some improvement in the property.

{¶ 8} Only one unit in the Downing Place complex has been sold recently to someone other than DAK: a unit was sold in April 2001 for $69,900.

{¶ 9} The BTA affirmed the BOR's decisions, finding that the sale prices in 1994 and 1996 claimed by DAK were too remote to be considered probative of value as of the tax lien date. The BTA further found that it could not rely on the more recent sales because there was no specific comparison available between the condition of those units and the condition of the units for which the reduction was sought. Kelly testified that the units in question had been improved since their purchase. Thus, the BTA found that the original purchase prices of the 13 units could not be indicative of their value in 1999. In addition, the BTA found that evidence of the sale of a unit for $69,000 indicated on its face that units in the complex could command higher prices than DAK had paid. Thus, the BTA concluded that DAK did not offer sufficient probative evidence of the value of the units. Therefore, the BTA adopted the valuation of the BOR.

{¶ 10} This cause is now before the court as an appeal as of right.

{¶ 11} The question presented by this case is whether the decisions of the BTA are unreasonable or unlawful. We find that the decisions are reasonable and lawful and affirm them.

{¶ 12} DAK argues that the BTA erred in two ways. First, DAK contends that the BTA failed to consider relevant testimony and, therefore, the decisions are against the manifest weight of the evidence. DAK's second contention is that the BTA erred in failing to consider alternative methods for determining tax values.

{¶ 13} The burden of proof to show that the valuation determined by a board of revision is in error resides with the party filing the appeal at the BTA. *Zindle v. Summit Cty. Bd. of Revision* (1989), 44 Ohio St.3d 202, 203, 542 N.E.2d 650; *Western Industries, Inc. v. Hamilton Cty. Bd. of Revision* (1960), 170 Ohio St. 340, 342, 10 O.O.2d 427, 164 N.E.2d 741. The appellant before the BTA must present competent and probative evidence to prove that the value that he or she proffers is correct. An appellant before the BTA is not entitled to a change in the value determined by the board of revision merely because no evidence is presented to rebut the appellant's claim. Id.

{¶ 14} The BTA's task in a real-property valuation case is to determine the fair market value of the property. The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities. *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph four of the syllabus.

{¶ 15} The BTA's statutory duty is to weigh the evidence and determine credibility. *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 601, 603, 665 N.E.2d 194. This court has always given the BTA wide discretion in weighing the evidence and judging the credibility of the witnesses. *Zukowski v. Franklin Cty. Bd. of Revision* (1994), 70 Ohio St.3d 503, 504, 639 N.E.2d 456. The BTA is not required to adopt the valuation fixed by any expert or witness. *Cardinal Fed. S. & L.,* 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph two of the syllabus. This court will not reverse the BTA's determination on the credibility of witnesses and the weight given to their testimony unless we find an abuse of discretion. *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240; *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 157, 573 N.E.2d 661. DAK has not alleged any abuse of discretion by the BTA in this matter.

{¶ 16} After considering the testimony and evidence submitted by DAK, the BTA could not find sufficient probative evidence to determine a value different from that found by the BOR. DAK is asking this court to review the evidence presented to the BTA, act as a super board of tax appeals, and reweigh the evidence. This court does not sit either as a super BTA or as a trier of fact de novo. *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 400, 20 O.O.3d 349, 422 N.E.2d 846.

{¶ 17} Recognizing that the purchase dates for the units in question were too remote to be considered probative, DAK raises as its second contention that the court should reverse the BTA's decisions and "order the BTA to apply the appropriate method of purchase price of comparable, unrelated property." Thus, what DAK wants this court to do is order the BTA to determine the value of the units in question based on the prices DAK paid for the additional units it purchased in 1999. The BTA did consider this alternative but stated that the specific condition of the comparables and the units that had been improved by DAK had not been established. The BTA stated that from Kelly's testimony, it knew that not all units that DAK owns are in the same condition. Thus, the BTA considered and rejected the valuation method that DAK wants this court to impose.

{¶ 18} In *Youngstown Sheet & Tube Co.,* 66 Ohio St.2d at 401–402, 20 O.O.3d 349, 422 N.E.2d 846, the taxpayer challenged "the precise method used by the

BTA to determine value instead of directly disputing the end result of the methodology which is, of course, a dollar amount valuation." Specifically, the taxpayer in *Youngstown* argued that the "market" approach was the only appraisal method applicable to determining fair market value in its case. Because only the taxpayer's appraisal was based on a market approach, the taxpayer was attempting to require the BTA to accept its valuation. The court refused to accept that argument, stating, "We decline to bind the BTA to a particular method of valuation because the imposition of rigid methodological strictures would necessarily impinge upon the BTA's wide discretion to weigh evidence and assess the credibility of witnesses." Id. at 402, 20 O.O.3d 349, 422 N.E.2d 846.

{¶ 19} Likewise, in this case, we decline to require the BTA to arrive at a valuation by using a particular valuation method. The BTA must be free to consider all valuation methods and to determine which witnesses are credible and what evidence is competent and probative in order to determine value. In *Am. Steel & Wire Co. of New Jersey v. Cuyahoga Cty. Bd. of Revision* (1942), 139 Ohio St. 388, 391, 22 O.O. 445, 40 N.E.2d 426, we stated, "[I]t should be observed that, while reproduction cost, depreciation, opinions as to market value, and income may be given proper consideration, true value is a question of fact to be determined by the taxing authorities. It does not appear from the record that the Board of Tax Appeals applied any particular method exclusively but merely determined the true value of the buildings on each parcel from all the evidence. This course was in conformity to law."

{¶ 20} Where the BTA rejects the taxpayer's evidence as not competent, probative, or credible and there is no evidence from which it can independently determine value, it may approve the board of revision's value without the board of revision presenting any evidence. *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 49, 689 N.E.2d 22.

{¶ 21} For the reasons stated, the decisions of the BTA are not unreasonable or unlawful, and they are hereby affirmed.

Decisions affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

Onda, LaBuhn & Rankin Co., L.P.A., Matthew A. LaBuhn and Todd A. Ernsberger, for appellant.

Martin Hughes & Associates and Martin J. Hughes III, for appellee Board of Education of the Columbus City School District.

Ron O'Brien, Franklin County Prosecuting Attorney, and Paul M. Stickel, Assistant Prosecuting Attorney, for appellees Franklin County Auditor and Franklin County Board of Revision.