Donofrio, J., concurring in part and dissenting in part.
 

 {¶ 53} I respectfully dissent from the majority's resolution of RKA's appeal and that portion of the majority's resolution of Ellis and EIA's cross-appeal dealing with valuation. I concur with the balance of the majority's resolution of Elis and EIA's cross-appeal. I would affirm the trial court's decision regarding the valuation of the RKA stock.
 

 {¶ 54} In a contract case, the primary role of the court is to ascertain and give effect to the intent of the parties.
 
 Saunders v. Mortensen
 
 ,
 
 101 Ohio St.3d 86
 
 ,
 
 2004-Ohio-24
 
 ,
 
 801 N.E.2d 452
 
 , ¶ 9.
 

 {¶ 55} Section 9(A) of the Shareholders' Agreement provides that all of the shareholders will come to a unanimous agreement as to the price of all outstanding shares of stock and then issue a certificate of valuation for the stock that is valid for one year. If this has not been done when a triggering event occurs, such as Ellis' termination of employment, Section 9(B) sets forth the process to determine the stock's value. Section 9(B) states in relevant part:
 

 * * * at the time of such Triggering Event, the Board of Directors of the Corporation shall appoint a Qualified
 Appraiser to determine the Agreement Price of the Offered Stock, considering all of the relevant business valuation standards and related factors including, but not limited to, those referenced in the Internal Revenue Services Guide for Valuation, Revenue Ruling 59-60, and other factors deemed appropriate by the Qualified Appraiser, and giving great weight to any prior valuations of the shares of the Stock which have been agreed upon by the Stockholders. * * * The Agreement Price shall be determined within ninety (90) days after the Triggering Event, and shall be binding upon the Corporation, the Stockholders, and their Personal Representatives.
 

 {¶ 56} The Shareholders' Agreement itself does not specifically define the term "valuation." The closest definition to the term "valuation" can be found in Section 9(A) of the shareholders' agreement. It states in relevant part:
 

 At least annually, within ninety (90) days following the end of each fiscal year of the Corporation, the Stockholders shall unanimously evaluate, agree upon, and establish the fair market value of each outstanding share of Stock in the Corporation. Said valuation shall be effective for a period of twelve (12) months and a Certificate of Valuation shall be included in the corporate minutes of the Corporation.
 

 {¶ 57} When Ellis purchased the RKA stock, he and Kashmiry agreed on a price. Ellis purchased 14.4 shares for $107,838, or approximately $7,500 per share. (Tr. 184). This fits the plain meaning of the word "valuation." Prior to Ellis purchasing the stock, Kashmiry was the sole RKA shareholder. As the president and sole shareholder, Kashmiry valued RKA's stock at $7,500 per share.
 

 {¶ 58} Despite the $7,500 valuation, Kelly Bianco, who RKA hired to appraise the stock after Ellis' termination, testified that she gave Ellis' purchase price of $7,500 per share little to no weight. (Tr. 575-577).
 

 {¶ 59} I would find that Bianco's valuation was not binding on the parties because, per the terms of the Shareholders' Agreement, the valuation was required to be completed within 90 days of Ellis' termination from RKA. Ellis was terminated from RKA on August 14 or 15 of 2014. Bianco's report was not completed until March 19, 2015. Per the Shareholders' Agreement, Bianco's valuation was four months delinquent.
 

 {¶ 60} Moreover, Section 9(B) specifically says "any prior valuation" should be given great weight. Given its plain meaning, the phrase "any prior valuation" would include both the process set forth in Section 9(A) and Kashmiry valuing the stock at $7,500 per share. Bianco admitted that she did not consider the prior purchase price of $7,500 per share in her valuation of RKA stock. (Tr. 575-577). While Bianco testified that she considered the other factors listed in Section 9(B) of the Shareholders' Agreement, her testimony indicates that she gave little to no weight to Ellis' purchase price of $7,500 per share instead of the great weight the Shareholders' Agreement required her to give it. (Tr. 575-577).
 

 {¶ 61} The trier of fact is not bound by the appraisal or valuation methodology used by any expert witness.
 
 Conti v. Christoff
 
 , 7th Dist. Nos. 99 CA 84, 99 CA 327,
 
 2001-Ohio-3421
 
 ,
 
 2001 WL 1199056
 
 citing
 
 Murray & Co. Marina, Inc. v. Erie Cty. Bd. of Revision
 
 ,
 
 123 Ohio App.3d 166
 
 ,
 
 703 N.E.2d 846
 
 (6th Dist. 1997), see also
 
 Youngstown Sheet & Tube Co. v. Mahoning County Bd. of Revision
 
 ,
 
 66 Ohio St.2d 398
 
 ,
 
 422 N.E.2d 846
 
 (1981).
 

 {¶ 62} With no certificate of valuation issued pursuant to Section 9(A) and no
 binding valuation issued pursuant to Section 9(B), the trial court looked to the plain meaning of the contract to determine the value of Ellis' stock at the time his employment ended.
 

 {¶ 63} The trial court had undisputed evidence that Kashmiry sold stock to Ellis that was valued at $7,500 per share. Furthermore, Frank Dixon, a licensed accountant who performed tax compliance and consulting work for RKA, testified that the value of RKA stock shortly after Ellis' employment was terminated was approximately $7,500 a share. (Tr. 225-227).
 

 {¶ 64} Based on the above, I would find that the trial court determined the value of the stock within the terms of the contract. Therefore, I would affirm the trial court's judgment in its entirety.