**[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 739.]**

WEBB/HENNE MONTGOMERY LUXURY APARTMENTS, APPELLEE, *v.* HAMILTON COUNTY BOARD OF REVISION, APPELLEE; SYCAMORE COMMUNITY SCHOOL DISTRICT, APPELLANT.

[Cite as *Webb/Henne Montgomery Luxury Apts. v. Hamilton Cty. Bd. of Revision*, 1995-Ohio-167.]

*Taxation—Real property valuation—Board of Tax Appeals' action of not basing true value solely on total cost expended at a given time for a partially completed apartment complex construction project is reasonable—BTA is vested with wide discretion to determine the weight given to evidence and credibility of witnesses that come before it—Supreme Court will not overrule BTA findings of fact that are based upon sufficient probative evidence.*

(No. 94-1878—Submitted June 15, 1995—Decided October 11, 1995.)

APPEAL from the Board of Tax Appeals, No. 92-X-473.

———————————

{¶ 1} Appellee, Webb/ Henne Montgomery Luxury Apartments ("Webb/Henne") is a general partnership that owns a one-hundred-unit apartment complex located on a fifteen-acre site in Montgomery, Ohio. Charles Henne, the managing partner of Webb/Henne, testified before the Board of Tax Appeals ("BTA") concerning the condition of the partially completed apartment project as it existed on the tax lien date of January 1, l990.  Henne testified that only six of the planned one hundred apartment units were near completion and, while most of the site work had been completed, there was no access to the site because the roads were too muddy to be paved.  Some landscaping was in place near the entrance to the project and the six units which were near completion; work had started on the clubhouse, but no work had started on the gatehouse.  The remaining ninety-four

apartment units were in various stages of construction, ranging from those for which the basements had not been excavated to those for which the basement walls had been poured to others on which framing had been started. As of January 1, 1990, Webb/Henne had spent a total of $4,631,238 on the entire project, consisting of $2,508,394 for hard costs (labor and materials), $843,704 for soft costs ( legal and architectural fees, insurance, etc.), $525,640 for interest, and $753,500 for land cost.

{¶ 2} The Hamilton County Auditor assessed the property at a true value of $2,577,830. Webb/Henne filed a complaint with the Hamilton County Board of Revision ("BOR"), alleging that the property had a true value of $1,000,000. Sycamore Community School District filed a counter-complaint, alleging that the property had a true value of $4,631,238. The BOR found the true value to be $4,631,250. Webb/Henne filed an appeal with the BTA.

{¶ 3} At the BTA hearing, Henne testified that his estimate of the market value of the project as of January 1, 1990 was $1,000,000. Henne contended that no matter how much had been spent on the project as of January 1, 1990, a knowledgeable buyer would pay only $1,000,000 for the project as it then existed. Henne, a former vice president in the real estate investment department of Prudential Insurance Company, contended that there was a difference between what Webb/Henne had incurred in costs to get the project to its status as of January 1, 1990, and what a buyer would pay for the project.

{¶ 4} Henne also presented an exhibit setting forth a value of $1,819,000, which he considered to be the maximum market value for the property as it existed January 1, 1990. Henne arrived at the $1,819,000 amount for market value by taking the hard costs and discounting them where he thought there had been cost overruns. Henne then adjusted the discounted hard costs by fifty percent for what he termed "inherited [*sic*] risk" to arrive at the value which he considered market value.

2

{¶ 5} David Wuest, an appraiser testifying on behalf of Webb/Henne, stated that in his opinion costs and value were not synonymous for this project as it existed on January 1, 1990. Wuest stated that because there is a risk that must be taken into account when taking over a partially completed project he would adjust the cost approach analysis in determining value. Wuest testified that because there was no income, he did not consider the income approach to evaluate the project.

{¶ 6} Neither the school district nor the BOR presented any witnesses before the BTA.

{¶ 7} After reviewing the evidence in the case, the BTA stated that Webb/Henne had not satisfied its burden of establishing that the property was worth only $1,000,000. The BTA also found that the appellees had not satisfied their burden of proof in asserting that the BOR's value should be retained. The BTA determined the property's value to be $1,953,500 by taking the final construction cost, $6.4 million, and applying the auditor's twenty-five-percent completion figure to arrive at a partially completed cost of $1.6 million. To determine the market value for the improvements the BTA further reduced the $1.6 million cost by an additional twenty-five percent to recognize "the undeniable risk any purchaser would take." The addition of the land purchase amount of $753,500 to the market value of the improvements ($1.2 million) results in the $1,953,500 value found by the BTA.

{¶ 8} Sycamore Community School District filed an appeal with this court.

{¶ 9} The cause is now before this court upon an appeal as of right.

_____

*Roeller, Roeller & Jameson* and *Kenneth D. Jameson,* for appellee Webb/Henne Montgomery Luxury Apartments.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Thomas J. Scheve*, Assistant Prosecuting Attorney, for appellee Hamilton County Board of

Revision.

*Klaine, Wiley, Hoffman & Meurer* and *Franklin A. Klaine, Jr.*, for appellant.

_____

*Per Curiam.*

{¶ 10} The school district's first proposition of law asserts that the BTA erred in finding that the true value was less than the total of all costs expended by Webb/Henne as of January 1, 1990.  The school district cites no cases to support its assertion that total costs expended at a given point in time for a partially completed project represents market value.  The BTA rejected the total cost approach, stating that it was "unlikely a developer would have purchased the site for that amount, at that time."  The BTA further stated that while costs are useful they must be checked against what the uncompleted project would bring if sold on the open market.  An example of a situation where cost would not equal value is where work on a construction project has been performed incorrectly. The cost of performing the erroneous work, while chargeable to the project, would not increase the value of the project.  The fair market value of a property reflects what portion of the cost will be recovered in a sale, not necessarily the actual cost of the project.  Indeed, the fair market value may exceed actual costs.  "In determining the value of property for the purpose of taxation, the tax assessor must take into consideration *all* factors which affect the value of property."  (Emphasis *sic*.)  *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 18-19, 73 O.O.2d 83, 86, 336 N.E.2d 433, 437.  Contrary to a consideration of all factors, the school district would have the BTA blindly accept total cost without regard to other factors.  We find the action of the BTA in not basing true value solely on the total cost expended at a given time for a partially completed construction project was reasonable.

{¶ 11} The school district's second proposition of law asserts that the BTA erred in relying upon the testimony of an appraiser in another case.  The school

district misinterprets what the BTA said. The BTA stated that the cost approach used in another case should be applied here. The BTA found that the cost approach methodology which it had used in another case was similar to what the auditor's office had used in this case. Ohio Adm. Code 5705-3-02(G) directs auditors to value a building under construction based upon "its value or percentage of completion as it existed on January 1."

{¶ 12} The BTA found that the Webb/Henne project was twenty-five percent completed on January 1, 1990 and that the ultimate total cost of the improvements was $6.4 million, thereby yielding a cost of $1.6 million on January 1, 1990. The BTA further reduced that amount by twenty-five percent to recognize what the BTA described as the "undeniable risk" that a potential purchaser would undertake in purchasing a partially completed project. While the BTA had used this method in another case, the same theory was testified to in this case by Henne, who used a fifty-percent discount factor for the "inherited [*sic*] risk" of purchasing an uncompleted project. Based on the facts in this case, the BTA found the inherent risk discount factor should be twenty-five percent rather than fifty-percent, as urged by Henne. The BTA is vested with wide discretion to determine the weight given to evidence and the credibility of witnesses that come before it. *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155. The risk factor used by the BTA is within the range presented to the BTA; therefore, its decision to use the cost approach to determine value was reasonable.

{¶ 13} The school district's third proposition of law asserts that the BTA erred in reversing the decision of the BOR after the BTA had concluded that the landowner had failed to meets its burden of proof. In making this assertion, the school district misinterprets the BTA's decision. In its decision, the BTA stated that the landowner had not satisfied its burden of proof in asserting the property was worth only $1,000,000. The BTA did not state that the landowner had failed to meet its burden of proof in showing that the BOR value was in error. In fact, the

BTA stated that the landowner had shed doubt upon the accuracy of the BOR's valuation and that the school distrtict had not sustained its burden in asserting that the BOR values should be retained.

{¶ 14} Based on the evidence before it, which consisted of the landowner's witnesses and the statutory transcript, there was sufficient evidence in the record upon which the BTA could determine value. In *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877, we summarized the functions of the BTA and this court in property valuation appeals:

"The BTA need not adopt any expert's valuation. It has wide discretion to determine the weight given to evidence and the credibility of witnesses before it. Its true value decision is a question of fact which will be disturbed by this court only when it affirmatively appears from the record that such decision is unreasonable or unlawful. *Cardinal Federal S. &L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433 paragraphs two, three, and four of the syllabus. This court is not a ' "super" Board of Tax Appeals.' *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 400, 20 O.O.3d 349, 351, 422 N.E.2d 846, 848. We will not overrule BTA findings of fact that are based upon sufficient probative evidence. *Hawthorne Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus." We find the BTA's action in not adopting the valuation set by the BOR to be reasonable.

{¶ 15} Finally, the appellant asserts that the BTA failed to specify the reasons for its decision and the evidence upon which it relied. The decision of the BTA set forth step by step how it arrived at its final value and cited the evidence upon which it based its decision. We do not find the BTA's action to be unreasonable

**{¶ 16}** We determine that there is sufficient probative evidence establishing the current true value of the property in accordance with the BTA's valuation. The decision of the BTA is reasonable and lawful and it is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____