**[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 36.]**

WEBB CORPORATION, APPELLANT, *v*. LUCAS COUNTY BOARD OF REVISION ET
AL., APPELLEES.

[Cite as *Webb Corp. v. Lucas Cty. Bd. of Revision*, 1995-Ohio-232.]

*Taxation—Real property valuation—Board of Tax Appeals has wide discretion in
weighing to evidence and credibility of witnesses.*

(No. 94-1414—Submitted December 15, 1994—Decided April 12, 1995.)

APPEAL from the Board of Tax Appeals, No. 92-K-1438.

_____

{¶ 1} The Webb Corporation, appellant, contests the true value found by the
Board of Tax Appeals ("BTA") for Webb's property, the Secor Building, as of
January 1, 1991. The Secor, located in Toledo, was built in 1908 as a hotel. It has
since been converted into a ten-story commercial building, containing offices and
residential apartments.

{¶ 2} The Lucas County Auditor, for tax year 1991, placed a true value on
the property of $1,575,000. Webb filed a complaint with the appellee Lucas County
Board of Revision ("board"), and the board determined that the true value of the
property was $1,468,000. Webb appealed this finding to the BTA. At a hearing
before the BTA, Webb presented the testimony and appraisal report of John R.
Garvin, and the board and the appellee Toledo Public Schools presented the
testimony and report of William P. Szabo.

{¶ 3} Garvin testified that the Secor is a distressed building in a distressed
market. He employed the discounted cash flow analysis, a type of income
approach, to value the property. In this analysis, he discounted the actual cash flows
from the property for 1991 and 1992 at twenty percent and added to these sums the
present worth, as of January 1, 1991, of the estimated market value of the property
as of January 1, 1993. This produced a value of $797,500, which Garvin checked

against market data. Satisfied that this figure was within the range of sales of the market data, he concluded that $797,500 was the true value of the property.

{¶ 4} Szabo also employed the income approach, utilizing the actual income as reduced by the actual expenses, after he had determined that both amounts conformed to the market, and applying a capitalization rate. In his opinion, the net operating income of $248,320 divided by a capitalization rate of 17.5 percent equaled a true value in money, as rounded, of $1,420,000.

{¶ 5} In its opinion, the BTA criticized Garvin for his lack of knowledge about the revitalization of the area surrounding the Secor, which, according to the BTA, indicated a different reversion value than he had estimated. The BTA found Szabo's report to be more probative and a better indication of the property's true value. Accordingly, the BTA ruled that the true value of the Secor was $1,420,000.

{¶ 6} This cause is now before this court upon an appeal as a matter of right.

_____

*Ronald B. Noga*, for appellant.

*Anthony G. Pizza*, Lucas County Prosecuting Attorney, and *Bertrand R. Puligandla*, Assistant Prosecuting Attorney, for appellees.

_____

**Per Curiam.**

{¶ 7} In Proposition of Law One, Webb argues that the record did not support the BTA's conclusion that Toledo was experiencing a revitalization and that the BTA could not discredit Garvin's report on this basis. We agree with Webb. However, we conclude that, even though Garvin's report cannot be discredited on this basis, the BTA reasonably and lawfully granted greater weight to Szabo's report and testimony, and we affirm its decision.

{¶ 8} According to *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877:

"The BTA need not adopt any expert's valuation. It has wide discretion to determine the weight given to evidence and the credibility of witnesses before it. Its true value decision is a question of fact which will be disturbed by this court only when it affirmatively appears from the record that such decision is unreasonable or unlawful. *Cardinal Federal. & S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraphs two, three, and four of the syllabus. This court is not a '"super" Board of Tax Appeals.' *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 400, 20 O.O.3d 349, 351, 422 N.E. 2d 846, 848. We will not overrule BTA findings of fact that are based upon sufficient probative evidence. *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus."

{¶ 9} The record does not support the BTA's conclusion that downtown Toledo was experiencing a revitalization. The appellees point to four suggestions of revitalization, all of which they elicited on cross-examination of Garvin: (1) the renovation of the Valentine Theater, about which Garvin did not know; (2) the conversion of the Port Side marketplace into a COSI facility, of which Garvin was aware, but had no current knowledge; (3) the general success of the Seagate Center branch of the University of Toledo, of which Garvin was aware; (4) the Toledo Public School System's lease of 20,000 square feet of the subject property, about which Garvin also knew.

{¶ 10} As to the first item, the record does not contain any positive evidence that the Valentine Theater was renovated, only the Toledo Public Schools' counsel's suggestion in his cross-examination question that it was. As to the second item, appellees' counsel admitted at oral argument that the COSI project was still pending. As to the third and fourth items, Garvin knew about them; however, he was not questioned further about any details, and he concluded that the area surrounding the Secor was still distressed. No further evidence of revitalization

was introduced. Thus, no sufficient, probative evidence supported the BTA's finding of fact that downtown Toledo was being revitalized, even though, *dehors* the record, it may be. Accordingly, this evidentiary shortcoming did not afford the BTA a basis to discredit Garvin's report.

{¶ 11} In Proposition of Law Two, Webb argues that the BTA should not have granted greater weight to Szabo's report. To this end, Webb complains that Szabo did not submit a full appraisal of the subject property because he only processed actual net income into an indication of value and did not compare his result with any other valuation approach. Webb also contends that Szabo did not adequately inspect the Secor. Finally, Webb maintains that the vacancy rate Szabo selected was unreliable because Szabo excluded from his analysis several large, vacant office buildings in downtown Toledo.

{¶ 12} As we stated in *R.R.Z. Associates*, *supra*, the BTA has wide discretion in granting weight to evidence and credibility to witnesses. "Absent a showing of an abuse of that discretion, the BTA's determination as to the credibility of witnesses and the weight to be given their testimony will not be reversed by this court." *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 157, 573 N.E.2d 661, 663. Webb has not shown any abuse of discretion by the BTA granting more weight to Szabo's report.

{¶ 13} As to Szabo's capitalizing actual net income, he testified that the rents were within the comparable range of market rents, $8-11; in fact, Garvin also selected $10 per square foot as market rent. Moreover, as to Szabo's failure to check his income approach against other valuation approaches, Garvin too declined to examine the cost approach. Garvin did not apply a market-data approach; he simply analyzed two sales with disparate sale prices. Szabo's decision seems warranted in light of Garvin's findings.

{¶ 14} In answer to Webb's complaint concerning Szabo's vacancy rate, such rate is Secor's actual vacancy rate. According to Szabo's testimony, the rate

was also within the range of market vacancies disclosed in a market survey for Toledo.  Szabo explained his failure to include the large, vacant buildings in his analysis by stating that the owners of such buildings were seeking tenants who lease larger areas than those offered in the Secor.  He testified that these buildings did not compare to the Secor in what they offered tenants, and the BTA, under *Witt Co.*, has the discretion to believe him.

{¶ 15} Finally, as to Webb's complaint that Szabo failed to adequately inspect the Secor, Szabo's associate, who assisted Szabo in his report, once lived in the Secor and, according to the testimony, was very familiar with it.

{¶ 16} We conclude that the BTA did not abuse its discretion in granting greater weight to Szabo's report and, accordingly, affirm the BTA's decision.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

––––––––––––––––––