[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 513.]

GENERAL MOTORS CORPORATION, APPELLANT, *v*. CUYAHOGA COUNTY BOARD

OF REVISION ET AL., APPELLEES.

[Cite as *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision*, 1996-Ohio-287.]

*Taxation—Real property valuation—Board of Tax Appeals' decision affirmed by*
*Supreme Court when decision is reasonable and lawful—Board of Tax*
*Appeals' decision remanded by Supreme Court when Supreme Court*
*unable to find any evidence to support board's finding.*

(No. 95-441—Submitted November 9, 1995—Decided February 14, 1996.)

APPEAL from the Board of Tax Appeals, Nos. 85-G-440, 85-A-441, 85-B-442 and

85-C-443.

––––––––––––––––––

{¶ 1} This case is once again before us after our remand in *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1990), 53 Ohio St.3d 233, 559 N.E.2d 1328, and in *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1993), 67 Ohio St.3d 310, 617 N.E.2d 1102. We were unable to ascertain how the Board of Tax Appeals ("BTA") reached its decisions, and, in those cases, we directed the BTA to set forth its findings and the basis therefor.

{¶ 2} On this remand, the BTA, on January 27, 1995, issued a more detailed decision, finding that the true value of the subject property was $41,500,000 for tax year 1982, $43,800,000 for tax year 1983, and $45,200,000 for tax year 1984. We described the facility in our first opinion.

{¶ 3} This cause is before this court upon General Motors Corporation's ("GM's") appeal as of right.

––––––––––––––––––

*Jones, Day, Reavis & Pogue*, *Roger F. Day* and *John C. Duffy, Jr.,* for appellant.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *William J. Day*, Assistant Prosecuting Attorney, for appellees Cuyahoga County Auditor and Cuyahoga County Board of Revision.

*Armstrong, Mitchell & Damiani*, *Timothy J. Armstrong*, *Deborah J. Papushak* and *William Mitchell*, for appellee Parma Board of Education.

―――――――――――

***Per Curiam.***

**{¶ 4}** In *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877, we stated:

"The BTA need not adopt any expert's valuation. It has wide discretion to determine the weight given to evidence and the credibility of witnesses before it. Its true value decision is a question of fact which will be disturbed by this court only when it affirmatively appears from the record that such decision is unreasonable or unlawful. *Cardinal Federal S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraphs two, three, and four of the syllabus. This court is not a '"super" Board of Tax Appeals.' *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 400, 20 O.O.3d 349, 351, 422 N.E.2d 846, 848. We will not overrule BTA findings of fact that are based upon sufficient probative evidence. *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus."

**{¶ 5}** GM, appellant, contests several specific BTA findings. Now that the BTA has set forth its reasons for its findings, we may cogently address GM's contentions. At the outset, we observe that GM claims that the testimony of its appraisal expert, Bruce Pickering, should prevail over the testimony of the competing appraisal expert, Robert J. Kocinski, presented by the Parma Board of Education ("Parma"), appellee. "However, such a determination is precisely the kind of factual matter to be decided by the BTA. It is clear from the record that the

BTA's final determination represented a compromise between the conflicting positions of the two experts." *Wolf v. Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St.3d 205, 207, 11 OBR 523, 524, 465 N.E.2d 50, 52. In any event, we will review each major contention and measure the BTA findings in light of the BTA's duty and our appellate role in these matters.

{¶ 6} First, GM claims that the BTA erred in rejecting GM's "greenfield model" to replace the facility under its cost approach. Pickering employed an engineering firm to design and price an ideal manufacturing complex to replace the plant. However, the BTA found that GM had "failed to demonstrate that its theoretical greenfield model is, in fact, an 'equal' substitute for this facility. Its characteristics vary substantially. It is much smaller. This, in our view, limits its flexibility for adaptation to other uses. It is less likely to be adaptable to shifts in future production requirements because of this limited size. Less space is available for storage or other ancillary needs. Its utility is not 'equivalent.' Further, the greenfield model is predicated upon a special hypothetical facility. It is far from evident this hypothetical structure would ever actually be constructed. Thus, appellant's greenfield model is predicated upon speculation. It may never become reality."

{¶ 7} The BTA, instead, adopted Kocinski's cost approach. Kocinski selected amounts from the Marshall-Swift valuation manual, a "tried and true generally accepted technique often employed in the appraisal field." The BTA may weigh evidence and grant credibility to some witnesses and none to others. We find no abuse of discretion in how the BTA weighed this evidence and credited the testimony. *Webb Corp. v. Lucas Cty. Bd. of Revision* (1995), 72 Ohio St.3d 36, 647 N.E.2d 162.

{¶ 8} Second, GM claims that under the cost approach the BTA should have deducted from total replacement cost more than the one million dollars depreciation that it did for additional deterioration for the roof of the facility. GM claims that

the BTA should have deducted Pickering's amount ($9,382,215) to repair the roof. However, the BTA found that GM had not demonstrated that an entire roof replacement was necessary as Pickering had proposed.

{¶ 9} Kocinski did not testify about any additional deduction for roof repair. Thus, the BTA could have selected no additional deduction or a deduction up to the nine million dollar figure that Pickering proposed. The BTA was well within its authority to select an amount in the range supported by the testimony. Accordingly, the evidence supports the BTA's finding of one million dollars as additional roof depreciation. See *W. Bay Manor Co. v. Cuyahoga Cty. Bd. of Revision* (1995), 73 Ohio St.3d 568, 570, 653 N.E.2d 379, 380.

{¶ 10} Third, GM claims that the BTA should have deducted from replacement cost an amount for a stamping plant upgrade to accommodate larger and more efficient transfer presses. Kocinski, to the contrary, considered the stamping plant suitable for general industrial manufacturing and did not allow any additional depreciation for upgrade. The BTA did not grant a further deduction for this item.

{¶ 11} The BTA was warranted in accepting Kocinski's testimony that the stamping plant was satisfactory for general use for industrial manufacturing. GM's argument borders on pursuing a current use valuation to transform this plant into a special automotive stamping plant. Of course, we have previously disapproved the current use method of valuation. *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1972), 32 Ohio St.2d 28, 33, 61 O.O.2d 238, 241, 289 N.E.2d 579, 582.

{¶ 12} Also, GM argues for an additional deduction for asbestos removal. The BTA ruled that GM had not adequately established a diminution in value due to the environmental contamination and asbestos. The BTA could not find any evidence that these defects must be corrected at any given time or that the cost here must be deducted on a dollar-for-dollar basis without any supporting evidence on its effect on market value. Moreover, Kocinski allowed no additional deduction for

asbestos removal. Accordingly, the record supports the BTA's finding. *Hawthorn Mellody, Inc. v. Lindley*, *supra*.

{¶ 13} Next, the BTA allowed extra physical deterioration for the heating, ventilating, roof and miscellaneous repairs only for the 1982 valuation. It did not deduct these amounts as additional depreciation from the 1983 or 1984 valuations because it "deemed [them] repaired or replaced by that expenditure in 1982." It concluded that deducting these amounts again would be an improper double credit.

{¶ 14} We are unable to find any evidence to support this finding. Neither appraiser testified to the finding that the BTA made; both appraisers carried these depreciation deductions through all three tax years. Since we do not find any record support for this finding, we remand this case to the BTA to deduct amounts for these defects, adjusting these deductions for the passage of time if necessary, for 1983 and 1984.

{¶ 15} When the BTA clarified its earlier decisions in its third decision, it reached different amounts as the final value for each year. The BTA states that it erred in its calculations in the earlier decisions. Since the BTA explained its earlier decisions in its third decision, we accept its explanation as to these different amounts. The BTA's final opinion satisfies our directive.

{¶ 16} Finally, GM claims that the BTA should not have placed so little weight on the market data approach. The BTA thoroughly discussed the comparable sales presented by both appraisers but did not give great weight to this approach. This it may do, and, since we do not find that it abused its discretion in so weighting this evidence, we affirm its decision.

{¶ 17} Accordingly, we reverse only that portion of the BTA's decision in which it did not deduct additional depreciation for heating, ventilating, roof and miscellaneous repairs from the 1983 and 1984 valuations. We remand this matter to the BTA to correct this failure and, if necessary, adjust these repair amounts for

such years.  We affirm the remainder of the decision because it is reasonable and lawful.

*Decision affirmed in part, reversed in part and cause remanded.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, PFEIFER and COOK, JJ., concur.

F.E. SWEENEY, J., dissents.

_____