BROOKLYN ACRES MUTUAL HOMES, INC., Appellant,

v.

CUYAHOGA COUNTY BOARD OF REVISION et al., Appellees.

[Cite as *Brooklyn Acres Mut. Homes, Inc. v. Cuyahoga Cty. Bd. of Revision* (1996), 111 Ohio App.3d 377.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 69411, 69412.

Decided June 3, 1996.

*Alan Belkin Co., L.P.A.,* and *Alan Belkin,* for appellant.

*William J. Day,* for appellees Cuyahoga County Auditor and Cuyahoga County Board of Revision.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *Karrie M. Kalail,* for appellee Brooklyn Board of Education.

*Armstrong, Mitchell & Damiani* and *Timothy J. Armstrong,* for appellee Cleveland Board of Education.

---

HARPER, Judge.

Plaintiff-appellant, Brooklyn Acres Mutual Homes, Inc. ("BAMH"), is a housing cooperative with its land and buildings located within the separate taxing/school districts of the cities of Cleveland and Brooklyn. The Cuyahoga County Auditor, for the 1991 tax year, set respective taxable values of $2,263,490 and $2,012,960 for the properties. These values represented thirty-five percent of the true value of the property—$6,467,110 in Cleveland and $5,751,310 in Brooklyn.

BAMH filed complaints with the Cuyahoga County Board of Revision ("the BOR") on March 2, 1992, seeking a reduction in the assessed total taxable values. The cooperative claimed that the taxable values for the Cleveland and Brooklyn portions of the property were, respectively, $933,905 and $931,595.

The boards of education for Cleveland and Brooklyn challenged BAMH's position in countercomplaints. The Cleveland Board of Education ("Cleveland") sought the preservation of the 1991 taxable value set by the auditor, whereas the Brooklyn Board of Education ("Brooklyn") sought an increase of the taxable value to $2,338,350 or thirty-five percent of the true value of $6,681,000.

The BOR heard the complaint and countercomplaints on September 13, 1993. The board maintained the auditor's taxable values for the 1991 tax year.

BAMH appealed these valuations to the Board of Tax Appeals ("the BTA") on October 29, 1993. BAMH claimed that the portion of property located within Cleveland had a true value of $2,394,000, and the property located within Brooklyn had a true value of $1,806,000. The cooperative thus claimed that the respective taxable values for these parcels were $837,900 and $632,100.

The BTA held a hearing on September 1, 1994 with regard to the valuations placed upon Cleveland's portion of the property. A second hearing was held on September 8, 1994 to elaborate on the valuations placed on Brooklyn's portion. Appraisers appeared on behalf of BAMH, Cleveland and Brooklyn at these hearings.[1]

Testimony from Donald E. Zak, BAMH's manager, revealed that three hundred and twenty-five buildings, housing six hundred dwelling units, are located on the 94.2 acres of land owned by the cooperative. The dwelling units consist of one-, two- and three-bedroom duplexes, townhouses and single family homes. Three hundred and forty of the dwelling units are situated on the approximately forty-one acres located within the city of Cleveland. The remaining two hundred and sixty units are located on the city of Brooklyn's approximately fifty-three acres. An administration building is situated on both Brooklyn and Cleveland property, and a garage and storage buildings are located within the city of Brooklyn. Finally, there are approximately seven acres of undeveloped land within the city of Brooklyn.

The dwelling units were originally built in 1943 under congressional authority for the purpose of housing servicemen and their families. However, when Congress announced in 1949 that such housing was to be disposed of, and then enacted this decision in 1956, the residents chose to purchase the development from the government for $3,180,000. The purchase was finalized in 1957.

---

1. Although the matters were originally consolidated for hearing and disposition, it was later determined that two separate hearings should be held because two separate findings of value were necessary. The parties, however, agreed to incorporate by reference BAMH's appraisal testimony in case No. 93–A–1236 (property located in Cleveland) into case No. 93–A–1237 (property located in Brooklyn).

The purchase price of a share of BAMH on September 1, 1994 was $2,500. The cost per share changed over the years, and some shares were currently outstanding at $600 and $1,000. A resident receives a shareholder certificate in exchange for the initial payment without the right to transfer, sublease or assign his or her interest. Once a resident vacates BAMH, he or she receives the cost of the share less a $200 closing fee and any charges due. The share is then returned to BAMH. Vacancies are filled by the use of a waiting list, a list which in 1991 had five hundred names.

Residents of BAMH sign proprietary leases and pay monthly charges which are based on the size of the unit. In 1991, the charges for a one-, two- or three-bedroom unit were, respectively, $170, $175 and $184. The charges increased $15 in 1994 for new residents only. Charges for water and sewer are incorporated into the monthly fees, but BAMH bills the residents for gas usage through sub-metering and the Cleveland Electric Illuminating Company directly bills them for electricity usage.

According to Zak, BAMH is a not-for-profit organization, since the monthly charges merely cover the costs of operating the cooperative. If an excess exists, the excess funds are used for such things as street repair and general maintenance. BAMH also maintains a reserve fund which is factored into the capital and used for future projects.

James Prewitt, a certified general real estate appraiser in the state of Ohio, performed an appraisal on behalf of BAMH. Prewitt first determined that since the property is such a large parcel of land under fee simple ownership with one deed, the highest and best use "is fee simple for the whole development, renting the individual units." Prewitt testified that two approaches were most suitable for valuation purposes—the income approach and the discounted cash flow analysis.[2]

The income approach necessitated that Prewitt determine what a dwelling unit would rent for in surrounding properties, with the rent adjusted for the above-mentioned dissimilarity, and other charged expenses. Specifically, Prewitt found that BAMH generally received "rent" in the amounts of $.32 per square foot for a single family unit, $.28 per square foot for a two-family brick and frame unit, and $.26 for either a block two-family unit or a four-family home. Given that BAMH's total properties amounted to about two hundred fifty thousand square feet, Prewitt computed that the cooperative received $134,340 in gross monthly income, and $1,612,080 in gross annual income. A seven percent vacancy figure

---

2. Since both Prewitt and James Caldwell, appellees' expert witness, testified that the income approach was the most appropriate method of valuation, and the BTA restricted its review to this method, testimony as to any other methods is not included in this opinion.

of $112,846 reduced the gross annual income to $1,499,234. Prewitt then used the actual expense figures for BAMH, $1,100,000, to find that its net operating income was just under $400,000.

The income approach next required that Prewitt capitalize the net income by dividing it by a capitalization factor of 9.5 percent. Prewitt determined under this approach that the value of the entire project was $4,202,000.

The parties stipulated that Prewitt's allocation of values to Cleveland's and Brooklyn's portion of the project could be submitted in a posttrial brief. Based upon Prewitt's $4.2 million appraisal value, the Cleveland figures were amended to $1,819,860 true value and $636,951 taxable value; the Brooklyn figures were amended to $2,380,140 true value and $833,049 taxable value.

James Caldwell, a certified general real estate appraiser in the state of Ohio, appeared at the second hearing on behalf of the county and both school districts. He testified that in his analysis of highest and best use, BAMH should be in some form of ownership similar to a cluster home/condominium development because of the common areas existing on the property.

Caldwell estimated that BAMH's units located in Cleveland would pull in $5 per square foot with an annual gross income of $1,352,140. The application of a five percent vacancy factor reduced the gross income to $1,284,533. The deduction of $1,225,000 in expenses, less real estate taxes, charges for natural gas, and Brooklyn's portion of the expenses, left a net operating income of $771,353. The total value via the income approach of BAMH's Cleveland portion amounted to $6.4 million after accounting for a capitalization rate of 12.02 percent and a ten percent tax additur.

Concerning the units located in Brooklyn, Caldwell projected the rental worth at $5.50 per square foot or $1,162,920.[3] He then applied a five percent vacancy factor, arriving at an effective gross income of $1,104,779. After deducting operating expenses of $1,225,000, less real estate taxes, natural gas charges, and those expenses attributable to Cleveland's portion, Caldwell computed a net operating income of $712,396. Caldwell then calculated that the total value of BAMH's Brooklyn portion was $6.6 million after accounting for a 11.47 percent capitalization rate and a ten percent tax additur, and adding the $192,000 and $200,000 allocations applied respectively to the service and storage buildings and the undeveloped land.

In its July 1995 decisions and orders, the BTA initially recognized Prewitt's and Caldwell's opinions that the income approach was the most appropriate

---

3. The differences in school systems and community services, according to Caldwell, justified the approximate ten percent difference between this figure and the figure applied to the Cleveland units.

method to determine the valuation of the subject property. The BTA, therefore, limited its review of the evidence to the income approach.

The BTA took into consideration the following factors when reviewing Prewitt's appraisal: primary usage of multiple listing descriptions of property in determining market rents for the properties, lack of interior inspections of the comparables and limited exterior viewing, the failure to account for the administration and storage buildings, and the assumption that the comparables' tenants were responsible for the cost of heating the units. The BTA also viewed Prewitt's appraisal, which was for the tax year succeeding the one under consideration, as leaving questions with regard to "how interchangeable the information from one appraisal year to the next is." Finally, the BTA took issue with Prewitt's final valuation of the entire project. Prewitt's indicated true value of BAMH, $4,200,000, was only $1,020,000 higher than the original sale price in 1957, $3,180,000. The BTA, noting that BAMH was carefully maintained, and that it remains a popular housing alternative with an extensive waiting list, found that the property "has appreciably increased in value in the past thirty-five years," contrary to the appreciation reflected in Prewitt's valuation. Based upon the foregoing review, the BTA found that Prewitt's appraisal for both the Cleveland and Brooklyn portions of BAMH to be "lacking in the necessary probative components" to warrant a reduction in the 1991 taxable values.

On the other hand, the BTA found that Caldwell possessed substantial experience in appraising properties in and around the immediate vicinity of BAMH. Caldwell prepared an extensive list of comparables for every building type located in the housing cooperative, and adjusted the values to reflect superiority in suburban location. The BTA finally noted that Caldwell used published support in the appraisal industry for his rental projections.

The BTA found no consequential difference between Prewitt's and Caldwell's usage of BAMH's expenses or their capitalization rates. Noting a difference between the vacancy factors, the board found that Caldwell's five percent vacancy figure reflected an average vacancy rate in the marketplace.

The BTA thus designated the following values:

| CLEVELAND | TRUE VALUE | TAXABLE VALUE |
|---|---|---|
| Land | $1,360,000 | $ 476,000 |
| Buildings | $5,040,000 | $1,764,000 |
| Total | $6,400,000 | $2,240,000 |

| BROOKLYN | TRUE VALUE | TAXABLE VALUE |
|---|---|---|
| Land | $1,232,000 | $ 432,200 |
| Buildings | $5,368,000 | $1,878,800 |
| Total | $6,600,000 | $2,310,000 |

BAMH appealed to this court from these valuations in August 1995.[4] The cooperative presents two assignments of error, but argues the assignments in accordance with the following propositions [5]:

"A.   The Board of Tax Appeals failed to apply the proper legal standards in reaching its decision.

"B.   The opinion rendered by the Board of Tax Appeals does not justify the conclusion reached by the Board of Tax Appeals.

"C.   BAMH satisfied its burden of proof, in BAMH's presentation of evidence before the Board of Tax Appeals."

BAMH first asserts that pursuant to *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, the BOR and the BTA were required to consider all factors which affected the value of the property, including the uniqueness of the property.   BAMH contends, however, that the BOR and the BTA failed to account for the uniqueness, *i.e.*, the cooperative status.   It argues, therefore, that the BOR erroneously relied on an individual ownership approach, and the BTA mistakenly treated BAMH as a for-profit landlord.

BAMH next argues that under *Cardinal Fed. S. & L. Assn.*, the BTA could adopt or reject either or both of the appraisals presented by Prewitt or Caldwell. BAMH submits that Caldwell's approach conflicts with a decision rendered in the state of Michigan, *Colonial Square Coop. v. Ann Arbor* (1982), Michigan Tax Tribunal Docket No. 46435, 1982 WL 9289.   Specifically, BAMH challenges Caldwell's use of "comparables" and "market" versus "actual" rent.   BAMH argues that the BTA abused its discretion in adopting Caldwell's valuations under these circumstances since it proved its entitlement to a reduction in the 1991 taxable values.

Initially, BAMH's references to the BOR's findings and conclusions is irrelevant to the present appeal.   This court's review is limited to the BTA's findings and conclusions.   See *Springfield Local Bd. of Edn. v. Summit Cty. Bd. of Revision* (1994), 68 Ohio St.3d 493, 628 N.E.2d 1365 (the BOR's valuations are

---

**4.**   App. Nos. 69411 (93–A–1236) and 69412 (93–A–1237) were consolidated for record, hearing and disposition on September 6, 1995.

**5.**   All three arguments relate to the propriety of the BTA's findings of fact and conclusions and, therefore, will be addressed simultaneously.

not entitled to presumption of validity). Additionally, the BTA's final orders clearly show its independent review of the appraisers' testimony and reports.

A taxpayer has a duty to prove the right to a reduction in value of real property. *Zindle v. Summit Cty. Bd. of Revision* (1989), 44 Ohio St.3d 202, 203, 542 N.E.2d 650, 650–651. See *Westlake Med. Investors, L.P. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 547, 660 N.E.2d 467; *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 653 N.E.2d 240. The BTA is not required to adopt the valuations presented by any expert. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877–878. Rather, the board possesses wide discretion in determining the weight of the evidence and the credibility of witnesses. *Id.;* see *Throckmorton v. Hamilton Cty. Bd. of Revision* (1996), 75 Ohio St.3d 227, 661 N.E.2d 1095; *Cardinal Fed. S. & L. Assn., supra.*

The BTA's determination of true value is, therefore, a question of fact which is not reversible when the record affirmatively shows that the decision is neither unreasonable nor unlawful. *Throckmorton,* 75 Ohio St.3d at 229, 661 N.E.2d at 1097; *R.R.Z. Assoc.,* 38 Ohio St.3d at 201, 527 N.E.2d at 877–878; *Cardinal Fed. S. & L. Assn.,* paragraph four of the syllabus. If sufficient probative evidence supports the BTA's findings of fact, a reviewing court should not overrule those findings. See *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 513, 660 N.E.2d 440; *R.R.Z. Assoc., supra.* For instance, when one party challenges one expert's valuation versus a valuation presented by an opposing expert, " 'such a determination is precisely the kind of factual matter to be decided by the BTA.' " *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (1996), 75 Ohio St.3d 181, 185, 661 N.E.2d 1056, 1060, quoting *Wolf v. Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St.3d 205, 207, 11 OBR 523, 524, 465 N.E.2d 50, 52.

In the present case, one of BAMH's major contentions is that the BTA failed to consider the "unique" nature of the housing development, *i.e.,* its cooperative status. BAMH uses this argument and the Michigan Tax Tribunal case, *Colonial Square Coop.,* to demonstrate its entitlement to a reduced true value. Specifically, BAMH argues that since the fee simple ownership of the cooperative is an encumbrance insofar as the individual units are not sold to the residents, and the monthly charges cover only the operation and maintenance of the development, the monthly "rents" applied by Caldwell coincidentally drove his valuation to the same figures set by the county.

The Supreme Court of Ohio addressed an "encumbrance" argument in the recent case of *Muirfield Assn., Inc. v. Franklin Cty. Bd. of Revision* (1995), 73 Ohio St.3d 710, 654 N.E.2d 110. Land developers deeded acreage to the plaintiff

association; the deed contained covenants, restrictions, conditions, and assessment liens. After the county auditor valued the subject property, the association sought a reduction to "zero" by asserting that the value of the common property was part of the value of the individual lot owner's parcel. The BOR affirmed the auditor's value. *Id.*

The association submitted an appraisal to the BTA which valued the individual lots with easements of enjoyment as absorbing a substantial part of the value. The BTA agreed and assigned a $2,500 value to the subject property. *Id.*

The BTA cited *Beckett Ridge Assn. v. Butler Cty. Bd. of Revision* (1982), 1 Ohio St.3d 40, 1 OBR 74, 437 N.E.2d 601, to support its value. *Beckett* authorizes a reduction in property values based upon zoning easements and other restrictions. *Id.*, paragraph one of the syllabus. However, one member of the BTA dissented in accordance with *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, a case wherein a fee simple estate of real property is valued as if unencumbered for tax purposes. The Franklin County Court of Appeals, however, limited *Alliance Towers, Ltd.* to federally subsidized housing cases and, thus, affirmed the BTA's decision. *Muirfield Assn.*, 73 Ohio St.3d at 711, 654 N.E.2d at 111.

In *Alliance Towers, Ltd.*, properties were encumbered with restrictive covenants with the government. The property owner received above market rent to subsidize the operation of the property. The Supreme Court of Ohio found that such restrictive covenants should not complicate the true value of the property. Therefore, "[f]or real property tax purposes, the fee simple estate is to be valued as if it were unencumbered. (*Wynwood Apartments, Inc. v. Bd. of Revision* [1979], 59 Ohio St.2d 34, 13 O.O.3d 19, 391 N.E.2d 346, approved and followed.)" *Alliance Towers, Ltd.*, at paragraph one of the syllabus.

The *Muirfield Assn.* court clarified this general rule as being "subject only to the limitations caused by involuntary governmental actions, such as eminent domain, escheat, police power, and taxation." *Id.*, 73 Ohio St.3d at 711, 654 N.E.2d at 111. Since Muirfield Association voluntarily imposed the restrictions without governmental intervention, the Supreme Court remanded the matter to the BTA to value the property as an unencumbered fee simple estate. *Id.* at 712, 654 N.E.2d at 111–112.

In accordance with *Muirfield Assn.*, this court fails to find that *Colonial Square Coop.* is controlling in the state of Ohio. The valuation of BAMH as an unencumbered fee simple estate was proper under the laws of this state. Moreover, both Prewitt and Caldwell discussed the "unique" nature of BAMH, and were in agreement as to which approach to use in deciding the property's value.

Regarding BAMH's suggestion that the BTA erroneously accepted Caldwell's appraisal, the BTA thoroughly examined the testimony and the comparables of both Caldwell and Prewitt. The board noted that Prewitt's appraisal was for the 1992 tax year, and not the year in issue, 1991. The BTA also found Prewitt's comparables deficient insofar as he failed to inspect the interiors, viewed only some from the exterior, and made certain assumptions in establishing a rental range of $.26 to $.32 per square foot. The board additionally questioned why Prewitt did not take the administration and storage buildings, or the undeveloped land, into account. Finally, the BTA found that Prewitt's minimal increase in the development's value since its purchase in the late 1950s was an unreasonable appreciation. The BTA, finding that Caldwell's comparables were extensive and properly adjusted, adopted the values presented by him.

BAMH further questions whether "market rents" versus "actual rents" should have been used in the income approach. It also suggests that no comparables existed and, thus, the BTA's recognition of them "negated the proven essence of BAMH's operation." Both appraisers and the BTA were well aware that no exact duplicate of BAMH existed for comparison analysis. However, given Prewitt's use of "comparables" and "market rents" in his analysis, BAMH's arguments on "market rents" and "comparables" are superfluous, and in direct contradiction to its appraiser's report.

As stated above, the BTA's determination of true value is a question of fact, reviewable only for unreasonableness or unlawfullness. See *Throckmorton; Cardinal Fed. S. & L. Assn.* The BTA stated its reasons for rejecting Prewitt's valuation, and the record supports its findings. In light of the BTA's criticism of Prewitt's appraisal, BAMH failed to satisfy the burden imposed by *Zindle.* Consequently, the BTA properly decided the true value of BAMH as $6.4 million (Cleveland) and $6.6 million (Brooklyn). See *Cleveland Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1995), 73 Ohio St.3d 715, 654 N.E.2d 1244.

BAMH's assignments of error are overruled.

The judgment is affirmed.

*Judgment affirmed.*

DYKE and PATTON, JJ., concur.