BUCKEYE POWER, INC., APPELLEE, *v.* KOSYDAR, TAX COMMR., APPELLANT.

[Cite as Buckeye Power v. Kosydar
(1973), 35 Ohio St. 2d 137.]

(No. 73-74—Decided July 11, 1973.)

138

*Messrs. George, Greek, King, McMahon & McConnaughey, Mr. Robert P. Mone* and *Mr. William R. Thyer,* for appellee.

*Mr. William J. Brown,* attorney general, *Mr. Will Kuhlman, Mr. Dwight C. Pettay, Jr.,* and *Mrs. Maryann B. Gall,* for appellant.

CELEBREZZE, J. The issue here is whether the decision of the Board of Tax Appeals is unreasonable or unlawful.

R. C. 5727.01 (D) states, in pertinent part:

"(D) 'Rural electric company' means any nonprofit corporation, organization, association, or co-operative engaged in the business of supplying electricity to its members or persons owning an interest therein in an area the major portion of which is rural."

No argument is raised as to Buckeye's status as a corporation organized and operated not for profit.

The Tax Commissioner contends that Buckeye does not supply electricity in an area the major portion of which is rural. The only evidence setting out what "rural" means, in this context, was offered by Buckeye:

"Mr. England: Now, how do you determine rural areas?

"'* * *

"Mr. Cummins: There are a dozen definitions in the Census Bureau, as you know. When I use the words 'rural areas,' I am talking about areas outside our metropolitan cities, areas which are sparsely settled, and I think if you just use our density figure, it speaks for itself. Our density figure is less than five."

In later testimony, the density figure of 4.7 consumers per mile of transmission line was compared with an average of 42.5 consumers per mile of line served by Ohio electric companies operated for profit. There being support in the record for the Board of Tax Appeals' decision, the decision of the board was clearly correct.

In addition, the Tax Commissioner contends that Buckeye is not in the business of supplying electricity to its members. The argument is in two parts:

(1) Buckeye owns no transmission lines, transformers, wire, etc., and thus "generates," but does not "supply," electricity.

Reading R. C. 5727.01 as a whole, this would also mean that any electric company which does not own its own transmission equipment would also be outside the statute. R. C. 5727.01(E) states, in pertinent part:

"Any * * * corporation * * *:

"* * *

"(7) Is an electric company when engaged in the business of *supplying* electricity for light, heat, or power purposes to consumers within this state." (Emphasis added.)

To find that the General Assembly used the same term in two parts of the same statute, but intended it to have two different meanings, would be as ridiculous as it is to say that only a generating station which owns its own transmission equipment is an electric company. The plain and clear meaning of the words of the statute show that Buckeye meets the "supply" requirement.

(2) By reason of a "banking arrangement" for excess power entered into with Ohio Power Co., Buckeye supplies power to one other than a "member."

We do not decide whether R. C. 5727.01(D) requires that a rural electric company supply electricity *only* to its members. It is sufficient to say that the intent of the General Assembly in enacting R. C. 5727.01(D) and R. C. 5727.-30 was to encourage companies to supply rural users, thus ultimately benefitting the rural population of the state.

The uncontroverted testimony in the record was that "banking arrangements" were a part of normal good business practice, made necessary by expansion planning and the very nature of electricity. To accept appellant's contention would lead to the conclusion that Buckeye could not be organized and operated on the basis of good economics and business practice and still be a rural electric company.

The Board of Tax Appeals, in its decision, considered all the contentions of the Tax Commissioner, stating that:

"* * * The uncontroverted testimony before the board indicates that * * * [Buckeye] meets all of the statutory criteria for classification as a 'rural electric company' as the term is defined in Revised Code section 5727.01(D). Notwithstanding the fact that Jefferson County may face financial hardship if the statutory definition is followed, any change as to the definition and the resultant tax treatment can only be effectuated through *legislative* change. An attempt to foment change by action of the Board of Tax Appeals in a legislative matter is clearly improper."

Our decision must be to affirm the Board of Tax Appeals if there is rational basis for its decision. The General Assembly did not intend that the Supreme Court act as a "super" board of tax appeals. *Hercules Galion Products* v. *Bowers* (1960), 171 Ohio St. 176.

The determination to be made here is based upon factual considerations only. Paragraph one of the syllabus in *Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53, citing earlier cases, states the law:

"The Supreme Court reviews decisions of the Board of Tax Appeals on questions of law. It is not the function of this court to substitute its judgment for that of the Board of Tax Appeals on factual issues, but only to determine from the record whether the decision rendered by the board is unreasonable or unlawful. (Paragraph two of the syllabus in *Board of Edn. of Cleveland Hts. City School Dist.* v. *Evatt*, 136 Ohio St. 283, approved and followed; *Brennan* v. *Bd. of Tax Appeals*, 175 Ohio St. 263, followed.)"

The decision of the Board of Tax Appeals is neither unreasonable nor unlawful, and is, therefore, affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.