**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 397.]**

GUPTA, APPELLANTS, *v.* CUYAHOGA COUNTY BOARD OF REVISION ET AL.,
APPELLEES.

[Cite as *Gupta v. Cuyahoga Cty. Bd. of Revision*, 1997-Ohio-376.]

*Taxation—Real property valuation—Unaccepted offers to purchase do not constitute a sale price and do not reflect the true value of the property— Board of revision's use of an appraisal to show true value is proper, when— Board of Tax Appeals' determination of true value reasonable and lawful, when.*

(No. 96-2437—Submitted May 28, 1997—Decided September 24, 1997.)

APPEAL from the Board of Tax Appeals, No. 95-J-1004.

————————————

{¶ 1} For tax year 1994, appellants, Kishan and Raj Gupta, filed a real property valuation complaint with appellee Cuyahoga County Board of Revision ("BOR") for their single-family residence located on a 2.5-acre lot in Gates Mills, Ohio. The residence is a two-story brick house built in 1979, containing five bedrooms and four and one-half bathrooms, with about 4,055 square feet of living area. The Guptas have been living in the house since about 1984, although they do not have an occupancy certificate.

{¶ 2} The Board of Education of the Mayfield City School District filed a countercomplaint alleging the property had a true value of $594,220, as determined by the county auditor. The BOR determined the true value to be approximately $500,000.

{¶ 3} The Guptas appealed the BOR's decision to the Board of Tax Appeals ("BTA"), where Kishan Gupta was appellants' only witness. He described in detail the various defects which exist in the house. Two of the major defects are that the house has no storm sewer connection and the sanitary sewer line is above the frost

line, which causes it to freeze in the wintertime. Because there is no storm sewer the sump pumps empty into a shallow creek, and when the creek rises there is a backup into the system, which floods the basement. In addition, Gupta detailed the building code violations given to him by the village of Gates Mills in 1981 when the builder went bankrupt. These violations include a chimney which is not the proper thickness, a garage that is not fire-sealed, no stairs at the rear of the house, and a front entrance that is not complete. The house flooring is wavy because the right size joists were not used, and the front doors are cracked, but have not been replaced because they are an odd size. There are roof leaks and the interior stairway shakes. Openings in the basement wall and fireplace have not been sealed.

{¶ 4} Gupta contacted several realtors about listing the house for sale. One realtor responded that it would not list the house until the code violations were rectified and an occupancy certificate was obtained. Another realtor refused for the same reasons.

{¶ 5} However in 1994 the Guptas were able to have the property listed for sale by Jennie Chiccola Realty. As a result of the listing four offers were received. The first offer, received in August 1994, was for $249,000 conditioned upon all code violations and structural defects being fixed. The Guptas countered by accepting the monetary amount of the offer, but requiring the buyer to accept the property as is, where is, with no warranties and a complete release of the Guptas. The Guptas' counteroffer was rejected.

{¶ 6} Another offer received in January 1995 in the amount of $206,000 required all code violations to be cured and specified additional corrections to be made. The Guptas rejected this offer and again countered, accepting the monetary offer but requiring the buyer to accept the property as is, where is, with no warranties or liability. The counteroffer was rejected.

{¶ 7} More recently, potential buyers made an offer in March 1996 of $226,000, which required extensive repairs and some seller financing. The Guptas

2

rejected the offer and countered by accepting the monetary offer, but requiring the buyers to take the property as is, where is, with no warranties or liability. The potential buyers rejected the counteroffer. The same potential buyers made another offer in July 1996 in the amount of $146,000, conditioned upon the Guptas' assuming "full responsibility and liability of cost under the EPA particularly CERCLA/SARA and RCRA statutes and related city[,] state and federal laws/regulations." Gupta rejected the offer.

{¶ 8} Gupta testified that in his opinion the property is worth $150,000. When the Guptas took out a $200,000 mortgage, in November 1993, the property was appraised at $560,000.

{¶ 9} At the BTA hearing, the BOR introduced the appraisal of Wayne F. Levering. Levering said his room-by-room tour of the interior of the Gupta property disclosed items of deferred maintenance and items of structural integrity, such as the lack of the doubling of the floor joists. During his three-hour meeting with Gupta, Levering said he was made aware of the problems with the property.

{¶ 10} Levering first employed a cost-approach analysis that yielded a value for the property of $451,669. Using the comparable-sales approach analysis, Levering determined the value to be $410,000, after he factored in a $30,000 cost to cure the discrepancies which he listed in an addendum to his report. In addition, Levering included another $30,000 discount as an incentive for a buyer to enter into a purchase agreement and make the necessary repairs. Levering stated that he did not consider the income approach analysis in making his appraisal because it was not relevant.

{¶ 11} The BTA accepted Levering's value of $410,000.

{¶ 12} This cause is now before the court upon an appeal as of right.

_____

*Forrester & Kovanda* and *Ralph D. Kovanda,* for appellants.

_____

**Per Curiam.**

**{¶ 13}** The only argument which appellants raise in this appeal is that the BTA erred in giving no consideration to the four failed purchase offers. We disagree.

**{¶ 14}** Gupta testified to four offers received during a period from August 1994 to July 1996. Counsel for the BOR objected to the introduction of the offers on the basis that the offers were too distant from the tax lien date and were not relevant because they were not actual sales. The attorney-examiner overruled the objections and permitted Gupta to testify concerning the offers.

**{¶ 15}** Nevertheless, appellants argue that the BTA did not consider the four failed purchase offers, citing the following statement of the BTA in its decision:

"The appellants have submitted evidence showing that their house is in a state of disrepair. However, they have not submitted probative evidence of value. Absent some evidence quantifying the damage and showing its effect on the value of the property, this Board is unable to determine the effect all the problems noted by the appellants have had upon the property's value."

**{¶ 16}** We do not understand the preceding statement to represent the BTA's evaluation of the unaccepted offers testified to by Gupta. The preceding paragraph relates to the fact that mere evidence of disrepair is not probative evidence of value. In *Throckmorton v. Hamilton Cty. Bd. of Revision* (1996), 75 Ohio St.3d 227, 661 N.E.2d 1095, the property owner contended that the BTA failed to give proper consideration to the distressed conditions of the property. In commenting on that situation, we stated that "[e]vidence of needed repairs, or the cost of needed repairs, while a factor in arriving at true value, will not alone prove true value." *Id.* at 228, 661 N.E.2d at 1096.

**{¶ 17}** The BTA's evaluation of the evidence presented by the parties is contained in its decision as follows:

4

"The appellants have not provided evidence which rebuts the appraiser's opinion of value. We therefore find the most persuasive evidence of value submitted herein has been the opinion of the appraiser."

{¶ 18} Although the BTA permitted Gupta to testify concerning the four unaccepted offers and his opinion of value, the BTA was entitled to evaluate his testimony and determine the weight to be given to it. The BTA was not required to assign any weight to such testimony. Without ruling on whether the testimony concerning the unaccepted offers should have been admitted, we find that such testimony was hearsay. The offerors were not present before the BTA and subject to cross-examination. See 25 A.L.R.4th 571 (1981), Unaccepted Offer for Purchase of Real Property as Evidence of Its Value.

{¶ 19} Moreover, while this court has recognized that an arm's-length sale of property raises the rebuttable presumption that the sale price reflects the true value of the property, *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 61, 23 OBR 192, 193, 491 N.E.2d 680, 681-682, unaccepted offers to purchase do not constitute a sale price and so raise no such presumption.

{¶ 20} In opposition to Gupta's testimony, the BOR presented the testimony of appraiser, Levering. In *State ex rel. Park Investment Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 25 O.O.2d 432, 195 N.E.2d 908, we recognized the use of an appraisal as one of the ways of showing true value. In that case we said that evidence of an arm's-length sale is often unavailable "and thus an appraisal becomes necessary." *Id.* at 412, 25 O.O.2d at 434, 195 N.E. 2d at 910. In this case, there was no arm's-length sale and therefore the BOR's use of an appraisal was a proper method to show true value.

{¶ 21} At the conclusion of the hearing, it was the BTA's duty to weigh Gupta's testimony against Levering's appraisal. *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 601, 603, 665 N.E.2d 194, 196. The BTA, as the finder of fact, is vested with wide discretion in determining the weight to be

given to the evidence and the credibility of the witnesses that come before it. *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph three of the syllabus. In this case after weighing the evidence, the BTA accepted Levering's appraisal value of $410,000.

{¶ 22} We will not substitute our judgment for that of the BTA on factual issues, *Buckeye Power, Inc. v. Kosydar* (1973), 35 Ohio St.2d 137, 64 O.O.2d 82, 298 N.E.2d 610, and we will not overrule its findings of fact if based upon sufficient probative evidence, *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257.

{¶ 23} The BTA's determination of true value in this case is supported by sufficient probative evidence, and its decision is reasonable and lawful, and is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————